UNITED STATES, Appellee

v

JOHN L. ANGLIN, Airman Basic,
U. S. Air Force, Appellant

18 USCMA 520, 40 CMR 232

No. 21,858

August 22, 1969

 

*Colonel Bertram Jacobson* argued the cause for Appellant, Accused.

*Major Donald B. Strickland* argued the cause for Appellee, United States. With him on the brief was *Colonel James R. Thorn.*

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted of one specification each of involuntary manslaughter (Charge I), wrongful appropriation of a Government vehicle (Charge II), and fleeing the scene of an accident (Charge III), in violation of Articles 119, 121, and 134, 10 USC §§ 919, 921, and 934, respectively. He was sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for two years. Intermediate appellate authorities have affirmed the findings and sentence without change. We granted review on the two following issues:

1. Whether the board of review was correct in ruling that it was not prejudicial error to admit into evidence at the trial the statement made by appellant to Special Agent Bradford.

2. Whether, under the circumstances of this case, the court-martial had jurisdiction of the offenses set out in the specifications of Charges I and III. (Briefs and argument were not requested on this issue.)

Briefly, the facts pertinent to the first issue reflect that on the morning of April 28, 1969, Special Agent Gordon, of the Office of Special Investigations, Grand Forks Air Force Base, North Dakota, was informed, by the local sheriff, that a serviceman had been found dead in a field about four and one-half miles from the base. Physical evidence, in the area where the body was found and which was viewed by Gordon, indicated the likelihood that a car had run over the victim. Numerous ruts were found in the field leading to and from the spot where the body was found. Gordon learned from the sheriff that a passerby had earlier observed a 1954 or 1955 Ford, with a light top and dark colored body, stuck at the situs of discovery of the body. Later, when he again passed by the vehicle was gone.

Gordon returned to the base and learned from the victim's roommate that the victim had been with the accused and two other airmen on the previous day and that the accused owned a 1953 or 1954 Ford Victoria, which was blue or black with a white top. Gordon summoned the accused to the orderly room and, without any warning of any kind, proceeded to question the accused. He did not tell him the purpose of the interview but only stated he "would like a little information." He learned from the accused that he had last seen the victim on the previous afternoon or early evening in a pool hall in a nearby community. He then asked him if he owned a 1953 or 1954 Ford, which was lighter on the top than on the bottom, and whether it had been

521

stuck on the previous evening. When he received an affirmative reply to both questions, Gordon allegedly discontinued the interview because, as he testified, "I had reason to believe that Airman Anglin could be a suspect, and I didn't want to infringe on his rights." He insisted that he did not warn the accused before asking any questions because, "I didn't consider him to be a suspect until all the information was put together that he did have an automobile similar to the one for which we had been looking, and it had been stuck." At this point, Gordon took the accused to his office for further interrogation.

The accused affirmed that he had replied to Gordon's questions, as the latter testified, because he felt he had to. Also, that he was scared. He asserted that Gordon had additionally asked him where the car had been stuck. It was after he told him where the car had been stuck that the investigator took him to his office. Had Gordon warned him prior to any interrogation, the accused insisted that he would not have answered any questions. Subsequently, after proper warning, the accused answered further questions by Agent Gordon and then gave a pretrial statement to Agent Bradford who questioned him in Gordon's presence. He answered their questions because, as he testified, "I felt that I was all ready in too deep to change the story."

In his statement to Bradford, which was admitted into evidence over defense counsel's objection, the accused related how, while driving back to the base with his friends, including the victim, he ran his car off the road and into a muddy field. It was while they were all attempting to get the car back on the road that the victim was run over. Accused was driving at the time. He knew that the victim was dead because he couldn't find a heartbeat. He walked backed to the base and, without permission, took a Government wrecker and used it to pull the car from the ditch. He left the victim where he lay. He and his

friends agreed between themselves not to tell anyone of the accident.

Appellate defense counsel contends that when Agent Gordon initially interviewed the accused, he had already obtained sufficient information to *suspect* that the accused was in some manner involved in the death of the victim. This being the case, Gordon was obligated to warn the accused under Article 31, Code, supra, 10 USC § 831. His admitted failure to do so resulted in the later statement to Bradford being the fruit of the poison tree and, hence, inadmissible in evidence. The intervening warnings by Gordon and Bradford were insufficient for neither of them told the accused that any previous information he had supplied could not be used against him since it had been obtained in violation of Article 31.

The Government alleges that since the accused was not a suspect at the time he was interrogated by Gordon, as Gordon so testified, there was no requirement to precede the interrogation by a warning; that unless the accused, on the basis of the evidence then available to Gordon, could be classified as a suspect *as a matter of law*, there was no error and the later statement to Bradford, given following a proper warning, was admissible.

Article 31(b), Code, supra, provides:

"No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

We have strictly applied this statutory provision on numerous occasions. See generally Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Confessions and Admissions, Warning, pages 141–147. See also Miranda v

■■■■■■■■■■■■■■

Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), and United States v Tempia, 16 USCMA 629, 37 CMR 249.

The key words in the Article, pertinent to this case, are "a person suspected of an offense." As the Government counsel point out, Agent Gordon insisted that he did not *suspect* the accused and felt that he was under no obligation to comply with the statutory provision. Only when the accused, in reply to Gordon's question, admitted that his car was stuck the night before, did he become, in Gordon's mind, a suspect. At that time, Gordon discontinued the questioning because he "didn't want to infringe on his rights."

The facts and circumstances of each case determine if an accused is, at the time of interview, a *suspect* and, therefore, entitled to the full protection of the law relating to self-incrimination. In the case at bar, the record reflects that Agent Gordon was aware, before he interrogated the accused, of the following facts:

1. The victim was dead.

2. His death appeared to have been the result of some kind of accident.

3. A rather aged Ford automobile with a light top and dark body was observed stuck at the scene and later removed to an unknown location without rendering assistance to the victim or reporting the accident to the proper authorities.

4. The accused owned an automobile of that somewhat unusual description.

5. The accused had been in the victim's company on the previous evening.

Are these data sufficient to serve as a basis for a holding that the interrogator had reasonable grounds to believe that the accused had committed *an offense?* We believe that they are. Cf. United States v Doyle, 9 USCMA 302, 26 CMR 82.

The reviewer for the staff judge advocate opined that whether or not Gordon suspected the accused, it was not prejudicial to admit the statement since the law officer had clearly presented the issue to the court in his instructions on voluntariness. The board of review held that the investigation did not focus on the accused as a suspect until *after* the conversation with Agent Gordon and no warning was necessary.

There is no question that no warning of any kind was given by Agent Gordon to the accused before the initial interrogation. Thus, if Gordon had reason to suspect the accused, any statements to him were inadmissible in evidence. Article 31, Code, supra. And, since neither Gordon nor Bradford told the accused that his prior unwarned statements could not be used against him, the statement to Bradford was likewise inadmissible. United States v Bennett, 7 USCMA 97, 21 CMR 223; United States v Taylor, 5 USCMA 178, 17 CMR 178. The fact that the law officer presented the question to the court members is not dispositive for once the failure to advise a suspect of his rights is established, and a subsequent confession's inadmissibility shown, prejudice is demonstrated by its use against him, without regard to the state of the record. United States v Reynolds, 16 USCMA 403, 37 CMR 23, and cases cited at page 406.

Under the circumstances of this case, we believe it unreasonable to conclude that Agent Gordon did not, at the time he interrogated the accused, at least, suspect the latter of having left the scene of an accident without rendering assistance to the victim and without notifying the proper authorities (Charge III). Agent Gordon was not a new, unschooled and naive member of the Office of Special Investigations. He was in fact the Commander of the OSI detachment on the base and, as such, undoubtedly a mature, knowledgeable, and sophisticated investigator who, despite his disclaimer to the contrary, had every reason to suspect the accused. If he didn't, we

**523**

believe that under the circumstances, he should have and the accused was entitled, by law, to a proper warning under Article 31. Failure to warn resulted in prejudicial error. United States v Reynolds, supra.

We hold, therefore, that the board of review erred in ruling that it was not prejudicial error to admit into evidence at the trial the statement made by the appellant to Agent Bradford. Reversal is required.

With regard to the second issue, we call attention to the decision of the Supreme Court in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969). Since this case may be reheard, the applicability of that opinion to Charges I and III should be considered.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge QUINN concurs.

DARDEN, Judge (dissenting):

I cannot say that the facts here are so overweighted in one direction that all would agree that Anglin was a suspect when questioned by authorities and that consequently he should have had an Article 31, Uniform Code of Military Justice, 10 USC § 831, and *Miranda*[1] warning. Where the evidence is susceptible to different interpretation, final determination of the conflict remains with those who have fact-finding power. United States v Schafer, 13 USCMA 83, 32 CMR 83. Because I believe this is such a case, I would hold that the board of review was correct in ruling that it was not prejudicial error to admit into evidence at trial the statement made by the appellant to Special Agent Bradford.

---

[1] Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966).