**UNITED STATES**

v.

**Robert B. ANDERSON, 303 56 8917, Mess Management Specialist First Class (E–6), U.S. Navy.**

NMCM 85 0745.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 26 July 1984.

Decided 29 Nov. 1985.

LCDR HAROLD M. SHAW, JAGC, USN, Appellate Defense Counsel.

KAREN DETAMORE, Civilian Defense Counsel.

LT P.J. BATTIN, JAGC, USNR, Appellate Government Counsel.

LT JOSEPH G. LEE, JAGC, USNR, Appellate Government Counsel.

Before COUGHLIN, Senior Judge, and MITCHELL and DECARLO, JJ.

COUGHLIN, Senior Judge:

Contrary to his pleas, appellant was found guilty at a general court-martial (with members) of unpremeditated murder in violation of Article 118(2) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918(2). The appellant was sentenced to confinement at hard labor for fifteen years, forfeiture of $190.00 pay per month for 180 months, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

This case arose out of a shooting that occurred after the appellant and Mess Management Specialist Second Class (MS2) Robert Walker returned to their Bachelor Enlisted Quarters (BEQ), on board Naval Supply Center, Cheatham Annex, Williamsburg, Virginia, following a night on the

town. The two went to the appellant's room where, sometime thereafter, MS2 Walker was shot in the center of the forehead by a .38 caliber handgun held by the appellant. Appellant testified at trial that the shooting was the result of an accidental discharge while attempting to unload the gun, and now asserts eight assignments of error before this Court:

## I

THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S REQUEST FOR AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER.

## II

THE MILITARY JUDGE ERRED IN CONDUCTING THE INQUIRY INTO THE PRETRIAL AGREEMENT BY NOT OBTAINING ASSURANCE THAT THE AGREEMENT ENCOMPASSED ALL UNDERSTANDINGS OF THE PARTIES.

## III

THE EVIDENCE FAILED TO ESTABLISH APPELLANT'S GUILT OF UNPREMEDITATED MURDER BEYOND A REASONABLE DOUBT.

## IV

THE MILITARY JUDGE ERRED WHEN HE FAILED TO GRANT A DEFENSE MOTION FOR A MISTRIAL ON THE GROUNDS OF IRREPARABLE TAINT OF THE PANEL MEMBERS DUE TO PRETRIAL DISCUSSIONS OF THE CASE BEING A CAPITAL MURDER CASE, WHICH, IN FACT, IT WAS NOT.

## V

THE MILITARY JUDGE ERRED WHEN HE FAILED TO GRANT THE DEFENSE MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF APPELLANT'S RIGHTS UNDER ARTICLE 31 OF THE UNIFORM CODE OF MILITARY JUSTICE AND THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

## VI

THE MILITARY JUDGE ERRED WHEN HE ADMITTED UNFAIRLY PREJUDICIAL EVIDENCE OVER THE OBJECTION OF DEFENSE COUNSEL.

## VII

THE MILITARY JUDGE ERRED WHEN HE FAILED TO GRANT THE DEFENSE MOTION FOR A MISTRIAL DUE TO PROSECUTORIAL MISCONDUCT.

## VIII

THE APPELLANT'S SENTENCE IS INAPPROPRIATELY SEVERE.

We discuss the assignments *seriatim.*

## I

The appellant first argues that the military judge erred in denying trial defense counsel's request for an instruction to the members on the lesser included offense of voluntary manslaughter. We disagree.

A military judge must instruct members on any and all lesser included offenses reasonably raised by the evidence adduced at trial. *United States v. Jackson,* 12 M.J. 163 (C.M.A.1981); *see also United States v. Rodwell,* 20 M.J. 264 (C.M.A.1985). Even testimony that is implausible or incredible is sufficient to raise an instructional issue. *United States v. Davis,* 14 M.J. 628 (AFCMR 1982). The duty to instruct arises whenever some evidence is presented to which the fact finder might attach credit if they so desire. In making the decision on whether to instruct on a lesser included offense, the military judge should resolve all doubt in favor of the accused. *United States v. Steinruck,* 11 M.J. 322 (C.M.A.1981).

In this case, the appellant was charged with premeditated murder. The military

judge instructed the members not only on that charge, but also on unpremeditated murder, involuntary manslaughter, and negligent homicide as well as the defenses of accident and voluntary intoxication. Appellate defense counsel argues that the fact that there were clothes strewn about the floor of appellant's room might suggest that there was a fight just prior to the shooting, thus raising the possibility of voluntary manslaughter. A review of the record, however, reveals that the clothes on the floor were immediately in front of the appellant's locker (R. 285), and appellant testified that his clothes were there because he was moving his belongings from one locker into another. (R. 371–372). Appellant also testified that he and the decedent were getting along very well on the night in question. Furthermore, trial defense counsel elicited from the pathologist that conducted the autopsy on the victim that he found "no injuries relating to a struggle." (R. 309).

■ Given the fact that the appellant himself gave a perfectly acceptable explanation as to why his clothes were on the floor and disavowed any confrontation with the decedent prior to the shooting, we cannot say that there was any evidence whatsoever to reasonably raise the issue of voluntary manslaughter. To accept the appellant's argument would be to require the military judge to instruct the members on every conceivable lesser included offense produced by defense counsel's imagination even though totally negated by the available evidence. This we will not do. Appellant's assignment of error is without merit.

## II

■ Appellant's second assignment of error involves the adequacy of the military judge's providence inquiry concerning the pretrial agreement entered into by the appellant.

Appellant stipulated essentially to three facts: (1) that he possessed the handgun in question, (2) that the handgun discharged while in his hands, causing the death of MS2 Walker, and (3) that the decedent did not have his hand on the gun at the time of discharge. (Prosecution Exhibit 2). In exchange therefor, the convening authority agreed to a sentence limitation, *inter alia*, of 15 years if appellant was found guilty of unpremeditated murder. Before accepting the agreement, the military judge conducted a lengthy providence inquiry in which he discussed with the appellant both the terms and consequences of the agreement and the voluntariness of the appellant's consent thereto. Appellate defense counsel, relying primarily on *United States v. Green*, 1 M.J. 453 (C.M.A.1976), *United States v. King*, 3 M.J. 458 (C.M.A.1977), and *United States v. Williamson*, 4 M.J. 708 (N.C. M.R.1977), argues that the inquiry was defectively insufficient in that the military judge failed to inquire as to the existence of any *sub rosa* agreements and failed to ascertain whether his understanding of the agreement comported with that of counsel. Appellate government counsel's response urges this Court to adopt a less restrictive "totality of the inquiry" analysis for error citing *United States v. Hinton*, 10 M.J. 136 (C.M.A.1981), and *United States v. Passini*, 10 M.J. 108 (C.M.A.1980). We find neither approach to be applicable to the facts presented in this case.

*United States v. Green, supra*, developed procedural requirements arising out of Article 45(a) of the UCMJ, 10 U.S.C. § 845(a) to be employed by military trial judges when faced with an accused who has offered to plead guilty as part of a pretrial agreement. These inquisitorial safeguards are meant to "satisfy the statutory requirement that a guilty plea not be accepted unless the trial judge first determines that it has been voluntarily and providently made," *Green*, 1 M.J. at 456, and represent a logical outgrowth of the fact that a plea of guilty deprives an accused of his day in court and the opportunity to present a defense. The basis for these procedural safeguards, however, is not present when an accused pleads not guilty, as in the case *sub judice*.

While the facts admitted in the appellant's stipulation relieved the Government

of the burden of proving certain elements of the offense, they did not amount to an admission of guilt. The Government was still required to prove the unlawfulness of the act, causation, and the requisite intent beyond a reasonable doubt. It was upon these issues that the appellant based his plea of not guilty and presented a vigorous defense to the triers of fact. Accordingly, the pretrial agreement in this case did not subject the appellant to a degree of peril sufficient to invoke the strict mandate of *United States v. Green, supra,* and its progeny.[1]

We therefore find the judge's in-depth inquiry into the providency of the pretrial agreement to be completely sufficient and satisfactory. Appellant's second assignment of error is without merit.

### III

■ We find the competent evidence of record sufficient as a matter of law to prove beyond a reasonable doubt appellant's guilt of unpremeditated murder in violation of Article 118(2), UCMJ. Notwithstanding the lack of an apparent motive and the contrary testimony of the appellant, whose credibility was soundly impeached, we find credible circumstantial evidence, including the expert medical testimony concerning the nature of the gunshot wound, the physical realities consonant with the operation of the .38 caliber weapon in question, and the furtive actions of the appellant following the incident, to conclude beyond a reasonable doubt, as did the triers of fact, that the appellant pulled the trigger with the intent to kill or inflict great bodily harm upon the decedent.

### IV

At trial, appellant moved for a mistrial based on the fact that one potential member was told prior to trial that the case was a capital one (which it was not), and that several other members had heard rumors to the same effect. The military judge denied appellant's motion for a mistrial but granted a challenge for cause against the one member. Appellant assigns as error the military judge's denial of his motion for mistrial.

■ A mistrial is appropriate only in cases where substantial doubt has been cast upon the fairness or impartiality of the trial. *United States v. Waldron,* 15 U.S.C. M.A. 628, 36 C.M.R. 126 (1966). The motion for a mistrial is addressed to the sound discretion of the military judge, whose ruling will not be disturbed on appeal unless there has been an abuse of that discretion. *United States v. Russell,* 43 C.M.R. 807 (A.C.M.R.1971). As a general rule, prior knowledge by the members of the facts and circumstances surrounding a case will not constitute sufficient grounds for a mistrial absent an indication that the members are unable to render an impartial finding and sentence based on the law and the evidence. *Russell,* 43 C.M.R. at 809. If the members are able to cast a fair and balanced eye upon the proceeding, then the existence of prior knowledge concerning the facts of a case will not warrant a mistrial.

■ There was absolutely no indication that the members in this case would be anything less than totally fair and impartial notwithstanding their prior knowledge of the generic subject matter, albeit partially incorrect. Absent such indication, we cannot say that the military judge abused his discretion in denying appellant's mo-

---

1. Even assuming, *arguendo,* that the safeguards embodied in Article 45(a) of the UCMJ applied to this case, we would be reluctant to reach a contrary result. In *United States v. Hinton,* 10 M.J. 136 (C.M.A.1981) and *United States v. Passini,* 10 M.J. 108 (C.M.A.1980), the Court did not find prejudicial error even though the military judge failed to comply with all of the specific inquiry requirements laid down in *Green.* Rather, the Court in these cases looked at the totality of the entire inquiry. Such an approach is in accord with more recent cases holding that error without any indication of harm or prejudice to the accused is harmless and, as such, does not warrant reversal. *See United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Remai,* 19 M.J. 229 (C.M.A.1985); *United States v. Jerasi,* 20 M.J. 719 (N.M.C.M.R.1985). *See also* Art. 59(a) of the UCMJ, 10 U.S.C. § 859.

tion. Accordingly, appellant's assignment of error is denied.

## V

In appellant's fifth assignment of error, he asserts the military judge erred by not suppressing a number of statements made after the shooting and the evidence derived therefrom. The operative facts are as follows.

Shortly after the shooting, appellant approached the billeting desk at his BEQ. Present at the desk were Petty Officers Arrington and MacLean. MacLean was on duty at the desk and was wearing the uniform of the day. Arrington was visiting with MacLean and was wearing civilian clothing. Appellant stated to both men that he had "killed somebody or hurt them really bad" and asked Arrington to follow him to his room. Upon entering appellant's room, Arrington, having noticed great amounts of blood on both the appellant and the floorway leading to his room, asked the appellant several times who the injured person was and where the person went. The appellant responded that he was "downstairs, outside." Arrington then rushed outside to find the victim. After being unable to locate the victim, he went back to the appellant's room and the appellant accompanied him back outside to where the victim lay dead. In the meantime, MacLean contacted base security and then joined Arrington outside, where they both stayed with the victim. The appellant remained at liberty and went back upstairs into his room. Appellant then leaned out of his window overlooking the area where the body was located and yelled, "If y'all want the gun, its up here." Lt. Deal and Officer Hall of the base police force subsequently arrived and approached the body. Deal asked a group of people assembled at the scene, including the appellant, if anyone "knew where he (the victim) was before he was here." Appellant responded that "he'd been up in his (the appellant's) room." At this point, MacLean told Hall that the gun was in the appellant's room and, after entering the room with appel-

lant's consent, Hall seized the gun. Appellant was later taken to the quarterdeck along with other witnesses to await the arrival of NIS investigators. While waiting, the appellant, overhearing a telephone caller say, "we have a suspect", said, in reaction, "yes, I shot him". Appellant was subsequently interrogated by both the NIS and the York County Sheriff's Department.

The military judge denied trial defense counsel's motion to suppress:

1) all verbal and non-verbal statements made to Petty Officers Arrington and MacLean concerning the whereabouts of the body and the location of the gun;

2) the non-verbal statement made by pointing out the gun to Officer Hall and Lt. Deal;

3) the gun found in appellant's room;

4) the statement made by the appellant while waiting on the quarterdeck to the effect that "I shot him;"

5) statements made to NIS agents during questioning;

6) statements made during the course of the interview with the York County Sheriff's department.

We discuss the various statements *seriatim.*

## STATEMENTS MADE TO PETTY OFFICERS ARRINGTON & MACLEAN

Appellant claims that he should have been advised of his Article 31, 10 U.S.C. § 831 rights immediately upon his initial appearance on the quarterdeck because his statement to the effect that he either killed or seriously injured someone made him a suspect to a crime and hence deserving of the proper warnings prior to any questioning. We conclude that the military judge's ruling on the matter was correct and that all statements made to or overheard by Arrington and MacLean were properly admitted.

 Article 31 warnings are required only when a military accused or suspect is to be interrogated or questioned with an investigatory intent or to elicit

incriminating responses in anticipation of criminal prosecution. *United States v. Richards,* 17 M.J. 1016, 1019 (N.M.C.M.R. 1984). *See also United States v. Butner,* 15 M.J. 139 (C.M.A.1983); and *United States v. Fisher,* 21 U.S.C.M.A. 223, 44 C.M.R. 277 (1972). Further, these warnings apply only to situations where, because of military rank, duty, or other similar relationship, there might be a subtle pressure on the person being interrogated to respond to the questions asked. *United States v. Duga,* 10 M.J. 206, 210 (C.M.A. 1981); *United States v. Gibson,* 3 U.S.C. M.A. 746, 14 C.M.R. 164 (1954). Questions asked in a casual or other non-investigatory manner need not be clothed with the cloak of Article 31. *See Duga,* 10 M.J. at 210. Thus, the circumstances surrounding the questioning and the intent of the questioner are essential elements in a determination of whether Article 31 rights need to be given.

■ We find that the questions asked by Arrington were not intended to elicit incriminating responses. There was no pressure on the appellant to respond to such questions based on the military relationship between them. It was the appellant who approached the duty desk in the BEQ and reported the incident to MacLean who had the quarterdeck watch. Arrington was merely visiting with MacLean at the time and knew the appellant as a co-occupant in the BEQ. Arrington was not on duty, was not in uniform, and was inferior in grade to the appellant. He had no investigative or other police responsibilities but, rather, inquired of appellant about the victim's whereabouts for the purpose of rendering medical assistance. He, along with MacLean, stayed with the victim after locating him and at no time attempted to apprehend or otherwise restrain the appellant.

The unique problems created by interrogations within the military rank structure which were addressed by Congress in enacting Article 31 were not presented by the facts in this case. *See Duga,* 10 M.J. at 212. Furthermore, both the context of the

questions and the particular desire of the questioner to help the victim make clear that Article 31 did not apply to this situation.

■ We further find the statements made by the appellant to both petty officers concerning the whereabouts of the weapon to be completely spontaneous and hence admissible. *United States v. Miller,* 7 M.J. 90 (C.M.A.1979). *See also United States v. Dohle,* 1 M.J. 223 (C.M.A.1975).

## NON–VERBAL STATEMENT TO OFFICER HALL BY POINTING OUT THE GUN AND THE GUN ITSELF

Appellant also complains that the gun was seized illegally because he pointed out its location in response to a question by Hall prior to any Article 31 warnings being given.

■ We agree that Hall asked the question with an investigatory intent and the question was reasonably calculated to evoke an incriminating response. Thus, the question was required to be prefaced with the appropriate warnings. *Richards,* 17 M.J. at 1019. We reject the Government's suggestion that the appellant was not a suspect at this point. Even if the investigators truly believed that the appellant was only a "witness", the facts leading up to the officer's arrival at the appellant's room clearly indicated that he should have been suspected in the shooting. *See United States v. Morris,* 13 M.J. 297, 298 (C.M. A.1982); and *United States v. Anglin,* 18 U.S.C.M.A. 520, 523–24, 40 C.M.R. 232, 235–36 (1969). Therefore, we hold that the admission of the non-verbal statement of the appellant in pointing to the gun constituted error. In turn, the gun was illegally seized and improperly admitted into evidence unless the doctrine of inevitable discovery applied under the circumstances.

■ Illegally seized evidence can be admitted against a defendant at trial if when the illegality occurred the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence

in a lawful manner had the illegality not occurred. *United States v. Kozak,* 12 M.J. 389 (C.M.A.1982).

Three significant facts reveal that the gun would have been inevitably discovered under lawful circumstances. First, before the arrival of the base police, the appellant hollered out of his window that the gun was upstairs in his room. This spontaneous information from the appellant was passed on to the security police upon their arrival at the BEQ, thereby providing the probable cause upon which a lawful search warrant could have been issued. Second, the appellant consented to Hall entering his room, thus rendering his presence there lawful. Under the plain view doctrine, law enforcement agents may lawfully seize items of contraband which come into view while the agents are otherwise lawfully at the place where the items are viewed. *United States v. Burnside,* 15 U.S.C.M.A. 326, 35 C.M.R. 298, 305 (1965). *See also Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983); *United States v. Britting,* 7 M.J. 978 (A.F.C.M.R.1979). The gun in question was on the floor of the appellant's room in plain view of anyone standing therein. Accordingly, the gun would have been inevitably discovered by Hall in a lawful manner under the plain view doctrine had the improper question not been asked. The gun was therefore properly admitted into evidence and appellant suffered no prejudice by the erroneous admission of his non-verbal statement.

### STATEMENT MADE ON THE QUARTERDECK

The record is clear that the appellant's statement to the effect of "Yes, I shot him" was completely spontaneous and was not elicited by government agents. Accordingly, the trial judge's ruling was cor-

---

2. We note that during the interview with the York County Sheriff's Department, questioning did not end when the appellant expressed his desire to speak with an attorney. At that point, the investigators had a duty to stop all question-

rect. *See United States v. Miller,* 7 M.J. 90; and *United States v. Dohle,* 1 M.J. 223.

### STATEMENTS TO THE N.I.S. & YORK COUNTY SHERIFF'S DEPARTMENT

Appellant asserts that the military judge erred in denying his suppression motions with respect to statements made by him during the course of interviews with both the N.I.S. and the York County Sheriff's Department. We find that the appellant was fully informed of his Article 31 rights prior to both interviews, and that his statements were voluntarily made and admissible. Accordingly, the motions to suppress were properly denied.[2]

### VI

We find that both the photograph of the victim and the victim's undershorts had significant probative value both as illustrative aids and as evidence tending to contradict the appellant's testimony. It is difficult to envision any countervailing prejudicial effect other than that caused by the nature of the crime itself. Thus, we agree completely with the trial judge's assessment of the relevant evidentiary considerations and find no reversible abuse of discretion. *See United States v. Peterson,* 20 M.J. 806 (N.M.C.M.R.1985).

### VII

We find no merit in appellant's claim of prosecutorial conduct. *United States v. Goodyear,* 14 M.J. 567 (N.M.C.M.R.1982). *See also United States v. Littlehales,* 19 M.J. 512 (A.F.C.M.R.1984).

### VIII

The sentence imposed in this case is particularly fair and appropriate given the heinous nature of the crime committed. We note further that the sentence approved was an integral and bargained for aspect of appellant's pretrial agreement.

---

ing. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). No statement obtained after that point, however, was used against the appellant.

**760**

*See United States v. Hendon*, 6 M.J. 171 (C.M.A.1979); *United States v. Usry*, 9 M.J. 701 (N.M.C.M.R.1980), *pet. denied*, 9 M.J. 402 (C.M.A.1980). The appellant's argument that his sentence was inappropriately severe is rejected.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Judge MITCHELL and Judge DECARLO concur.