UNITED STATES, Appellee

v

WILLIE L. BALLARD, Staff Sergeant,
U. S. Air Force, Appellant

17 USCMA 96, 37 CMR 360

*Lieutenant Colonel Carl R. Abrams* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel Harry O. Hinz* argued the cause for Appellee, United States. With him on the brief were *Colonel James R. Thorn* and *Colonel Emanuel Lewis.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at McGuire Air Force Base, New Jersey, charged with larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He pleaded not guilty but was found guilty as charged. He was sentenced to a bad-conduct discharge, and confinement at hard labor for eighteen months. The convening authority approved confinement at hard labor for one year and a bad-conduct discharge; and suspended the whole sentence with provision for remission thereof on September 16, 1967, unless sooner vacated. A board of review in the office of the Judge Advocate General of the Air Force affirmed the finding of guilty and the sentence. This Court granted review to consider two issues which will be hereafter stated.

Facts disclosed by this trial record establish the following sequence of events.

On the evening of March 18, 1966, Airman Lewis, a member of the Air Police Squadron at McGuire, performed routine base patrol using a vehicle. Such duty consisted of protecting all Government property and securing all buildings.

Having refueled his truck at the base motor pool at approximately 7:45 p.m., he noticed a private car back up to the platform of the Base Equipment Management Office (BEMO), located across the street from the motor pool, some one hundred yards distant. He watched an airman—the accused—emerge from the car, ascend the platform steps, and then receive what appeared to be a tool box from someone inside the building. Lewis then drove from the motor pool, observing the passing of yet another box.

Over defense objection, based on both Code, supra, Article 31, 10 USC § 831, and Fifth Amendment considerations, the law officer permitted Lewis to further testify that he thereafter accelerated his vehicle and drove to the area in question. Reaching the scene, he observed two tool boxes on the ground. A third box was later discovered in the car. Asking the accused if the latter worked there, accused responded, " 'Give me a break.' " When asked for his identification card, accused repeated this request "probably six more times." When told again to produce his identification card, the accused said, " 'How much is it worth to you? Fifty dollars if you let me go.' "

Lewis responded by advising accused of his Article 31 rights, then calling headquarters for aid.

Testifying on the limited issue, Ballard informed the court that when Lewis drove up he, the accused, was on his way to the latrine in Base Supply—the only one in the area. At that time, he saw an Airman Walsh coming down the building steps carrying two tool boxes. When stopped and queried, the appellant advised Lewis, " 'You'd better ring the bill and ask the airman, you saw him drop them.' " Other than requesting permission to visit the latrine, he said nothing more to the air policeman. Later, testifying on the merits, accused again denied making incriminating statements.

The two issues formulated from these facts are:

A. Whether the extrajudicial inculpatory statements of the accused to Airman Second Class Joseph Lewis were inadmissible and whether the record reflects that they were made as a result of an official interrogation without the accused first being warned of his rights under Article 31, Uniform Code of Military Justice.

B. Whether the law officer erred to the substantial prejudice of the accused in refusing to submit to the court on proper instructions the issue of whether the accused was a suspect at the time he made the inculpatory statements to Airman Lewis.

Appellate defense counsel maintain that when questioned, accused was a "suspect" within the meaning of Article 31, supra; that this confrontation constituted an "interrogation" within the meaning of the above-mentioned Article; that Ballard's responses thereto were "statements"; that other available evidence cannot remove the prejudicial effect of allowing such remarks to stand; and, finally, that being a factual issue for the court's determination, proper instructions should have been given delineating the problem.

Appellate counsel for the Government deny, in whole and in part, the correctness of these conclusions and would have this Court adopt a similar view.

From our examination of this trial record, we see no reason to quarrel with the legal concepts advocated by the defense. Neither do we take issue with the authorities relied upon by counsel. However, unlike defense, we do not find the theories they espouse applicable to the facts of this case. It is on this basis that we affirm the decision of the board of review.

The duties and responsibilities of Airman Lewis, for times here pertinent, have already been set forth. In addition, it was shown that authorized persons could remove tools from the BEMO during evening hours. On the other hand, Lewis, while on patrol, was required, perforce, to check all parties in and around these areas. McGuire Air Force Base, we understand, is an aerial port of entry for foreign travelers. Its services and facilities are in twenty-four hour use; its ground and maintenance crews are in need of tools for around-the-clock duty. On the other hand, the whole area abounds with transients. Thus, in fulfillment of this responsibility, and for no other reason, Lewis stopped the accused. In no sense was Ballard suspected, in this setting, of having committed a crime so as to encompass and bring into need the warning requirements of Article 31. Not every routine or administrative check by a policeman of a serviceman's identification must be preceded by Article 31 warning. United States v Hopkins, 7 USCMA 519, 22 CMR 309; United States v Schilling, 7 USCMA 482, 22 CMR 272; United States v Nowling, 9 USCMA 100, 25 CMR 362. Necessarily, this was not an interrogation within the contemplation of United States v Tempia, 16 USCMA 629, 37 CMR 249. Cf. Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966).

*Nowling*, where the exception rather than the rule applied, is factually distinguishable from the case at hand. That airman was stopped and asked to show his pass by a service patrol-

man. This action was taken by one who strongly suspected Nowling had been deprived of his pass because of an earlier uniform violation. In sum, Nowling was suspected of having committed a pass violation; hence, under those circumstances, an Article 31 warning became paramount. Cf. United States v Doyle, 9 USCMA 302, 26 CMR 82.

The dissimilarities of United States v Gorko, 12 USCMA 624, 31 CMR 210, are equally apparent for that accused was found still guarding an entrance gate with the fallen victim nearby. Earlier he had telephoned the security office admitting that he had shot a fellow guard. Ensuing events made it seem probable that Gorko was questioned by a sergeant already aware of his complicity in the shooting.

No such relationship existed between Lewis and Ballard for the latter was suspected of nothing. In fact, it appears that each was a stranger to the other. Most assuredly, the question asked and the demand made of the accused were not designed, nor geared, to elicit a statement of incrimination. Indeed, it is safe to say, appellant's response was borne of a guilty conscience. Statements of this character are not rendered inadmissible by lack of prior warning. United States v Workman, 15 USCMA 228, 35 CMR 200. In United States v O'Brien, 3 USCMA 325, 12 CMR 81, we earlier observed that one who "volunteers" information—even with Article 31 warning—does so at his peril. In *Gorko*, too, we recognized the distinct nature of *res gestae* revelations.

Moreover, spontaneous statements are considered voluntary within the meaning of paragraph 140*a*, Manual for Courts-Martial, United States, 1951. Cf. United States v Lake, 17 USCMA 3, 37 CMR 267. In short, it is clear, the law officer did not abuse his discretion in making the interlocutory ruling admitting Ballard's incriminating remarks into evidence.

It is also patent that the law officer did not err in refusing to present this issue to the court as a disputed question of fact. Only where the question of "voluntariness is placed in issue by the evidence" need the law officer submit the matter to the court under appropriate instructions. United States v Gorko, supra, and cases cited therein. This record is utterly devoid of factual controversy. Prosecution's case aptly demonstrates that accused was not a criminal suspect and was not interrogated in this guise, but, rather, spontaneously incriminated himself. Ballard, in turn, testified on the merits and at an out-of-court hearing that he had never made the utterances attributed to him. In short, the only problem confronting the court-martial was a question of credibility, nothing more. United States v Ledlow, 11 USCMA 659, 29 CMR 475. No issue requiring instructions having been raised by the evidence, there was no instructional error. United States v Workman, supra.

For these reasons, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.