UNITED STATES, Appellee

v

PAUL T. GRAHAM, Private, U. S. Army, Appellant

21 USCMA 489, 45 CMR 263

No. 25,006

June 30, 1972

 

*Captain Robert H. Dickman* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Arnold I. Melnick.*

*Captain James T. Harper* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Ronald M. Holdaway.*

## Opinion of the Court

DUNCAN, Judge:

The appellant was convicted of one specification alleging the theft of an automobile, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. His sentence to a dishonorable discharge, total forfeitures, and confinement at hard labor for ten months has remained unchanged. We granted review to determine whether the military judge erred by admitting into evidence three separate pretrial statements of the appellant, given successively to Lieutenant Domencic, Mr. Dodd, and Mr. Davin.

I

The appellant's troubles began when, as the driver of the vehicle in question, he was stopped by military police at Fort Leonard Wood, Missouri, after having made an illegal turn. When he was unable to comply with a request of a military police sergeant to display his driver's license and identification card, he was directed to get out of the car and ordered into the back seat of the military police vehicle. There he was questioned by Lieutenant Domencic, the military police duty officer, who had been informed by the apprehending officer of the appellant's failure to have the above-mentioned documents.

Lieutenant Domencic testified that he asked the appellant his name, rank, and unit of assignment. Domencic then testified:

"A. I asked him if he had a driver[']s license or ID Card and he said no. I was kind of confused at the time and my next chain of thought was to get the license number, tag number, of the automobile and find out who owned the car. I asked him whose car it was. . .

"Q. Without, well go ahead. You can tell about that.

"A. He said something, I thought he said something like a last name of Collins and I said what and he said 'It's stolen.'"

On cross-examination, Domencic related that he asked these questions in order to obtain the information necessary for the proper completion of the traffic violation ticket he was preparing. When questioned as to why he asked the appellant who owned the car, Lieutenant Domencic replied, "Well, I wanted to find out if he owned the car or if a friend owned the car."

As soon as the appellant disclosed that the car was stolen, Domencic and his partner ordered the three other men out of the car, spread-eagled them for a search, and called for help. Domencic had not at that time received a stolen or missing vehicle report and did not suspect the appellant of any but the traffic offense. He stated that had he been suspicious, he would not have allowed the other occupants to remain in the car while he questioned the appellant.

490

Appellate defense counsel contend, as did counsel at trial, that at the time he questioned Graham, Lieutenant Domencic had reasons to believe that the car might have been stolen because of the appellant's lack of appropriate identifying data, and that the appellant, as the driver, was a likely suspect. Under these circumstances, they argue, the Lieutenant's failure to warn the appellant with regard to his right to silence (Article 31, Code, supra, 10 USC § 831; United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967); Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966)) prior to eliciting his admission of guilt requires reversal.

The Government alleges that no warning was required since the inquiry by Lieutenant Domencic was not an interrogation for the purpose of eliciting incriminating responses but a routine check pursuant to the stopping of the vehicle for a traffic violation; that the incriminating reply was spontaneous and not even particularly responsive to the question; and that the evidence reveals that the Lieutenant had no reason to suspect the appellant of having stolen the automobile.

The meaning and application of Article 31, Code, supra, has been explored by this Court on many occasions. See generally Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Confessions and Admissions, Warning, pages 141–150. For the purpose of this opinion, the following quotation from United States v Anglin, 18 USCMA 520, 523, 40 CMR 232 (1969), will serve to place the issue in proper perspective:

"The facts and circumstances of each case determine if an accused is, at the time of interview, a *suspect* and, therefore, entitled to the full protection of the law relating to self-incrimination."

Where the interviewee is not *reasonably* suspected of an offense ■ (cf. United States v Anglin, supra) and the questions asked are not designed, nor

geared, to eliciting a statement of incrimination, neither the warning requirements of Article 31 or *Miranda-Tempia* are required. United States v Ballard, 17 USCMA 96, 37 CMR 360 (1967). Similarly, a response borne of a guilty conscience is not rendered inadmissible by lack of a prior warning. United States v Workman, 15 USCMA 228, 35 CMR 200 (1965).

In our opinion, the evidence in this case does not reflect as a matter of law that Lieutenant Domencic ■ had reason to suspect the appellant of driving a stolen automobile at the time he initiated the interview. There had been no report of the larceny and, in fact, the record reflects that the owner was unaware of its theft until notified thereof by the military police. The manner in which Lieutenant Domencic physically reacted to the appellant's admission tends to belie suspicion. The indirect nature of the question ("I asked him whose car it was") suggests that it was not designed to elicit an incriminating response. The car could have been owned by the appellant as "[i]t is not uncommon for citizens to forget their permits and registration cards." Allen v United States, 390 F2d 476, 479 (CA DC Cir) (1968). Likewise, it could have been the property of an unknown friend or of one of the three other occupants.

We hold that under the circumstances of this case the military judge did not err in admitting into evidence the appellant's pretrial statement to Lieutenant Domencic.

II

Subsequent to his admission to Lieutenant Domencic, the appellant was transported to the base police station and placed in a detention cell. The Criminal Investigations Detachment duty investigator, Mr. Dodd, was summoned and Lieutenant Domencic told him all that had occurred, including the appellant's admission that the car he was driving was stolen.

Mr. Dodd testified that after he advised the appellant of his right to re-

main silent and of his right to counsel, the appellant answered certain questions but refused to make a written statement. Dodd asserted that he made no reference to the appellant with regard to the latter's prior statement to Lieutenant Domencic. Dodd, in testifying, summarized the appellant's answers to his inquiries:

". . . He indicated that Private Townsend and one of the other individuals that were with them had done the hot wiring and he had done the driving of the car and that Boyer and Bell were just riding in the car and did not actually participate in the larceny since they were hiding in the woods and they went down there and picked them up."

Several hours later, Mr. Davin took over from Dodd as duty investigator. Upon arrival at the station he observed the appellant, whom he knew, in a detention cell. Davin testified:

"As I said I knew Paul Graham and I had talked with him on several occasions prior to that day. I approached him and kind of joking I said 'What have you done, Paul?' and he said, he had a little problem like before and he said that he would like to talk with me about it since he knew me."

Prior to interviewing the appellant, Davin read the military police report but did not discuss the case with Mr. Dodd. Davin testified that he was unaware of any prior efforts to interview the appellant. After advising Graham of his right to silence and his right to counsel and receiving the latter's acknowledgment that he did not desire counsel and would consent to being questioned, Davin obtained a written statement which was admitted in evidence. This statement (Prosecution Exhibit 4) in which the appellant acknowledged his part in the theft of the automobile, is substantially in accord with the oral admission testified to by investigator Dodd.

Appellate defense counsel's attack upon the second and third confessions

**492**

is two-pronged: (1) If the statement of Lieutenant Domencic █ is held to be inadmissible then these two are likewise inadmissible because the appellant was not informed that his prior unwarned admission would not be used against him; (2) both statements are independently inadmissible because they were obtained in direct violation of the requirements of *Miranda-Tempia*.

Since we have held the statement to Lieutenant Domencic to be admissible in evidence, we need consider only the second basis for assertion of error. The statement to Mr. Dodd is alleged to be inadmissible in light of the testimony of Dodd that the appellant declined to make a formal written statement. Counsel contend that this sufficed to indicate that the appellant desired to make no statement at all or that he was so confused as to his rights that he could not intelligently waive them. Prosecution Exhibit 4, the statement to Davin, they aver, must be considered in light of the appellant's awareness that two prior statements had been taken from him; the second made after he had tried to put a stop to the interrogation. The appellant testified at trial that he informed Dodd at the outset of the interrogation that he did not desire to make any statement.

The record reflects that the warnings given to the appellant by both Dodd and Davin fully complied with the requirements of *Miranda-Tempia*. Counsel do not contend otherwise, but urge that the appellant stated to Dodd that he did not desire to make a statement and that interrogation nevertheless continued. The issue of whether he made this desire known to Dodd, or whether Dodd's testimony that Graham refused only a written statement is a fact question that was before the military judge. While the latter did not make a specific ruling regarding this controverted question of fact, his admission of the testimony by Dodd leads to the conclusion that he resolved this question against the appellant. We will not disturb that ruling. Article 67(d),

Code, supra, 10 USC 867. See also United States v Gentle, 16 USCMA 437, 441, 37 CMR 57 (1966); United States v Gwaltney, 20 USCMA 488, 490, 43 CMR 328 (1971). Dodd had previously informed the appellant that his "statement could be either by word of mouth or in writing." The appellant's later refusal to execute a written statement does not reflect such confusion with regard to his right to silence that demands the conclusion that the testimony of Dodd is inadmissible. Pettyjohn v United States, 419 F2d 651, 655 (CA DC Cir) (1969).

The testimony of Mr. Davin that the appellant requested an opportunity to discuss with him his "little problem" stands unrebutted on the record and is not contested at this level. The appellant's earlier refusal to execute a *written* statement for Mr. Dodd clearly reflects his understanding of his right to remain silent. He does not now nor did he at trial contend that he confessed to Mr. Davin only because he had already admitted his complicity in the offense. Considering the evidence in this record we are satisfied that Prosecution Exhibit 4 was admissible as the product of the appellant's voluntary decision to confess. United States v Barksdale, 17 USCMA 500, 38 CMR 298 (1968). See also United States v Gaines, 21 USCMA 236, 45 CMR 10 (1972).

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge QUINN concur.