**UNITED STATES**

.v.

**Airman Michael H. JOHNSON, FR 472–78–1186 United States Air Force.**

**ACM S24633.**

U. S. Air Force Court of Military Review.

17 Nov. 1978.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Patrick A. Tucker.

---

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Robert T. Mounts.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

DECISION

ARROWOOD, Judge:

The accused was found guilty of larceny in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The proof presented by the prosecution included a confession made by the accused to his supervisor without proper warning and a subsequent written confession to the security police. The prosecution contended there was no need for a warning as the confession to the supervisor was spontaneous. However, we hold that the language used by the supervisor was designed to elicit an incriminating response from the accused. We find further that this inadmissible statement also tainted his subsequent confession to the security police.

Master Sergeant Hollowell, Branch Chief of Equipment Maintenance for the 43d Munitions Maintenance Squadron was approached by an airman who informed him that the accused, a member of his organization, had stolen a government tool box. The informer also told him where the stolen tool box could be located. Sergeant Hollowell informed his superiors, and along with the informant and the security police retrieved the missing tool box.

Sergeant Hollowell had for some time, been working closely with the accused and had counseled him regarding his personal problems as late as the previous afternoon; therefore, he sought to personally contact the accused before the security police apprehended him. Finding the accused was not at work, he left a message at the home of the accused's fiancee asking that the accused contact him. Later that evening, he received a telephone call from the accused, who asked Sergeant Hollowell if he was looking for him. When Sergeant Hollowell replied, "yes", the accused asked, "About what?" Sergeant Hollowell replied,

"About the box." The accused then said, "Oh", and agreed to meet in the parking lot of the Base Chapel.

Sergeant Hollowell informed the commander and the security police about the meeting before he went to the parking lot. He stated his reason for going to meet the accused was his personal concern for the accused, and how he might react to being apprehended by the security police.

When Sergeant Hollowell reached the parking lot, the accused joined him. Although he did not recall questioning the accused about the "box," there is no question that the "box" was discussed. During the conversation that followed, Sergeant Hollowell recalls the accused asked him why he and the security police were looking for him, and Hollowell replied, "About the box." Accused asked how they had found out and the Sergeant replied that someone saw him; the accused apologized for not telling him at the counseling session the previous day. Sergeant Hollowell made it clear that he knew what was meant by the apology, as he himself had previously mentioned the "box" when he talked to accused over the telephone.

The conversation between Sergeant Hollowell and the accused lasted approximately ten minutes before the security police arrived. Both accompanied the security police to their headquarters, and Sergeant Hollowell was present when the accused was advised of his rights under Article 31, Code, 10 U.S.C. § 831, supra, and his rights to counsel. With the permission of the investigators, the accused consulted with Sergeant Hollowell, who advised him to "Just be honest and do what you think is right". Shortly, thereafter, the accused made a complete written confession to stealing the tool box.

The accused's testimony was very similar to that of Sergeant Hollowell. He remembered the telephone conversation as merely a request from the Sergeant to meet him, with no discussion about the "box." He states he was concerned that he was in trouble for taking the entire day off for a

hold baggage shipment. He further testified that the conversation in the parking lot began by a discussion of his absence from work, his fiancee and her family. Sergeant Hollowell then asked him, "What about the box?" The accused asked if he wanted to hear his story and proceeded to relate the circumstances of the offense.

■ The trial judge narrowed the issue of admissibility of the confessions to whether or not the statement made to Sergeant Hollowell was spontaneous. We believe he decided correctly that Sergeant Hollowell was acting in an official capacity and that if the admissions made to him were not spontaneous, they would contaminate the statement subsequently made to the security police as "fruit of the poisoned tree." *United States v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); *United States v. Nargi*, 2 M.J. 96 (C.M.A.1977); *United States v. Seay*, 1 M.J. 201 (C.M.A. 1975); *United States v. Dohle*, 1 M.J. 223 (C.M.A.1975).

There is no question that under the facts of this case, Sergeant Hollowell suspected the accused of taking the tool box. He freely acknowledged that he was sure the accused committed the offense. *United States v. Anglin*, 18 U.S.C.M.A. 520, 40 C.M.R. 232 (1969); *United States v. Doyle*, 9 U.S.C.M.A. 302, 26 C.M.R. 82 (1958).

He never represented to the accused that his concern for him grew from anything other than a proper friendship between a sergeant/supervisor and an airman/subordinate. Nevertheless, in his official capacity, he was sincerely interested in helping the accused face his problems and handle them in a responsible manner. *United States v. Dohle* and *United States v. Seay*, both supra.

■ Whether one believes Sergeant Hollowell's recollection that he told the accused over the telephone he wanted to talk about the "box" or the accused's version that the question, "what about the box" was asked in the parking lot, it is obvious that Sergeant Hollowell was intent upon having the accused relate to him the circumstances surrounding the taking of the tool box. The language used by Sergeant Hollowell was designed to elicit an incriminating response from the accused. We can see no difference as to whether it was made immediately prior to the meeting via telephone, or in person. Sergeant Hollowell fully anticipated the accused would respond to his expressed desire to talk about the "box" in an incriminating manner. Under these circumstances we find that the statement of Sergeant Hollowell was not spontaneous and that a warning was required before he questioned the accused. See *United States v. Mraz*, 2 M.J. 266 (A.F.C.M.R.1976).

■ The statement made to the security police closely followed the admission to Sergeant Hollowell; we note he was even present at the time the security police took the statement. When the accused was asked what effect, if any, the prior statement had on his decision to confess to the security police, he responded, "Well, I figured, you know, I had already told him what had happened, so if they wanted a statement they could get it from him . . . they had everything they needed. I was looking for a way to ease, you know, my trial in court." The conclusion is inescapable that the inadmissible statement of Sergeant Hollowell led directly to the second statement, thereby tainting it and requiring its exclusion from evidence. *United States v. Nargi; United States v. Seay*; both supra. The admission of these statements was error prejudicial to the substantial rights of the accused.

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered.

EARLY, Chief Judge, and HERMAN, Judge, concur.

ORSER, Judge, absent.