## UNITED STATES

v.

**Airman First Class Charley R. TROTTER, FR 261–77–7008, United States Air Force.**

**ACM S24839.**

U. S. Air Force Court of Military Review.

21 March 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Major Wade B. Morrison.

Appellate Counsel for the United States: Colonel James P. Porter and Captain W. Alan Woodford, USAFR.

Before HERMAN, ARROWOOD and MILES, Appellate Military Judges.

## DECISION

ARROWOOD, Judge:

A special court-martial convicted the accused of making a false official statement and filing a fraudulent claim in violation of Articles 107 and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 932.

Appellate defense counsel assert that the accused's confession which resulted from questioning the accused without advisement of his rights under Article 31, Code, 10 U.S.C. § 831, *supra,* was improperly admitted into evidence. However, Government counsel contend that advice under Article 31, Code, *supra,* was not required because the accused was not a suspect at the time he was first questioned by the investigator. We agree with the Government.

On 3 June 1979, the accused reported to the security police that someone had stolen his Big Boss M–50 tires, Keystone rims, axles, and gears from his car. On 26 June 1979, he submitted a claim for this property

to the Government as the car had been parked on the military base. The claims investigation revealed that the car was improperly registered on base because it was not insured as required by regulations, therefore, a copy of the claim file was forwarded to security police for further investigation. The security police reviewed the file and called the accused in for questioning. After being advised of his Article 31, Code, *supra*, rights as to this offense, the accused admitted having no insurance, but said he had been told by his supervisor that he could leave the car on the base. Then the investigator accompanied the accused to the parking lot and scraped the base decal off the front left bumper of the car. He advised the accused that he could either take his car off base or place it in the auto hobby shop or the security police impoundment lot until registration requirements were met or other arrangements made.

The next morning the accused came by the investigator's office and requested that he be allowed to place his car in the impoundment lot. When the car was placed in the lot a local base inventory form was prepared. While preparing this form, the investigator noticed that the rear tires were wide and had been mounted, with the white raised letters inside, on Keystone rims of the same design as those mounted on the front of the vehicle. On direct examination the investigator testified, "I remember [sic] just briefly going over the claims report that the Staff Judge Advocate had got [sic] me and I asked him where he had purchased the tires and the rims of almost the same magnitude that he reported missing in this area." The accused stated that he purchased the tires from a sergeant stationed at the base and the other items from a local salvage yard. When examined by the defense counsel about his question to the accused, he answered that the accused was asked, "You replaced them with the same as you have on the front, where did you get your mags and your rims?" The investigator testified on cross examination that he "was curious to the point that he had replaced them so soon with what was on the front," but would not adopt counsel's use of the term "suspicious".

Although the investigator, a sergeant with nine years as a security policeman and five years in investigations, claimed the accused was not a suspect at the time the questions were asked, he returned to his office and immediately checked the claims form. Upon determining that the description of the items on the form included Keystone rims, and Big Boss M-50 tires, he returned to the impoundment lot to check the items more closely. At this point, he testified, "there was a mere suspicion, a possibility to me that further investigation need be conducted on that portion of it."

The investigator then contacted the sergeant from whom the accused stated he had purchased the tires. The sergeant's explanation proved to be unsatisfactory for he could not provide the details requested. The next step, a trip to the local salvage yard, revealed that it had been closed for several months. At that time an attempt was made to interview the accused, however, he was on leave for several days and had departed the area.

When the accused returned from leave he was told that he should report immediately to investigations. Upon reporting he was advised of his rights, including the fact that he was suspected of making a false official statement and submitting a false claim. However, nothing was included as to whether the original statements made to the investigator could be used against him. At that time the accused made a written statement admitting the charged offenses.

■ Under Article 31, Code, *supra*, a *suspect* may not be questioned by a person subject to the Code without first advising the suspect, that he need not make a statement and that any statement he makes may be used against him in a trial by court-martial. Whether an accused is a suspect depends, in each case, upon the facts known to the investigator and the totality of the surrounding circumstances. If there are reasonable grounds to suspect that the person being questioned has committed an offense, the warning must be given. *United States*

*v. Henry*, 21 U.S.C.M.A. 98, 44 C.M.R. 152 (1971); *United States v. Anglin*, 18 U.S.C.M.A. 520, 40 C.M.R. 232 (1969); *United States v. Hardy*, 3 M.J. 713 (A.F.C.M.R. 1977), pet. denied, 3 M.J. 470 (C.M.A.1977).

We conclude on the basis of the facts set out above that at the time the investigator asked the accused where he obtained the items similar to those reported missing from his car, he had no reason to believe the accused had committed the offenses charged. The investigator denied that he suspected the accused at the time he asked the question, and we believe it can fairly be concluded from other surrounding circumstances that his denial was truthful. *United States v. Schafer*, 13 U.S.C.M.A. 83, 32 C.M.R. 83 (1962). Although he admitted he was curious, his curiosity, as evidenced by his question to the accused, was only concerned with how the accused succeeded in finding suitable replacements for his property in that area and not designed to elicit a statement of incrimination. *United States v. Graham*, 21 U.S.C.M.A. 489, 45 C.M.R. 263 (1972). When the investigator went to the impoundment lot, he had no reason to suspect the accused had committed any offense other than the improper registration of his car. The additional fact that the items reported stolen from the car had been replaced with similar items some thirty eight days after the theft was reported will not give rise to reasonable suspicion that the owner had falsely reported the theft. We do not perceive the investigator's action in rechecking the claims file to be an indication that the accused was a suspect, but rather an attempt to determine whether there was a possibility that a crime had been committed by the accused. Prior to rechecking there was no need for the accused to be given a warning in accordance with Article 31, Code, *supra*, and the accused's reply as well as the written statement which followed were properly admitted in evidence.

The findings of guilty and the sentence are

AFFIRMED.

HERMAN, Senior Judge, and MILES, Judge, concur.