UNITED STATES

v.

**Staff Sergeant Kenneth W. DEAN, FR 421–62–5175 United States Air Force.**

**ACM 23251.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 2 July 1981.

Decided 10 May 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel James P. Porter and Major Michael J. Hoover.

Before HODGSON, POWELL and MILLER Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

Despite his pleas, the accused was convicted by military judge alone of multiple worthless check offenses totaling $2,200.00 in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence extends to 11 months' confinement at hard labor, forfeiture of $200.00 per month for 11 months, and reduction to airman.

Pursuant to Article 69, Code, 10 U.S.C. § 869, *supra*, this case has been forwarded to us for review by The Judge Advocate General, who has directed our attention to four issues which will be discussed *seriatim*. For reasons hereinafter stated a rehearing is ordered.

### I

WAS THE ACCUSED PREJUDICED BECAUSE OF *EX PARTE* COMMUNICATIONS BETWEEN THE MILITARY JUDGE AND A POTENTIAL DEFENSE WITNESS?
DID THE MILITARY JUDGE ABUSE HIS DISCRETION BY FAILING EITHER TO RECUSE HIMSELF OR GRANT THE DEFENSE CHALLENGE FOR CAUSE?

The record discloses that eight days after this case was referred to trial the defense counsel submitted a request for a sanity board indicating the accused had attempted suicide, had experienced periodic memory lapses, and was a diagnosed alcoholic. Two days prior to the trial the military judge met with Captain Stankus, a clinical psychologist assigned to the Mental Health Clinic, the deputy staff judge advocate, and the trial counsel. The conversation was unrecorded, and neither the accused nor his counsel were informed of or invited to attend the meeting.

According to the military judge, the purpose of the meeting was to preliminarily inquire of Captain Stankus if the accused suffered from any disease or defect which would impair his ability to understand the nature of the proceedings against him, or to participate in his defense. The military judge also wished to know if the accused had a mental disease or defect, and if he could distinguish right from wrong and appreciate the wrongfulness of his acts.

Captain Stankus responded to the questions by assuring the judge that while the accused suffered from alcoholism, he had no mental disease or defect, could distinguish right from wrong, understood what was taking place, and could effectively participate in his defense. This response from Stankus caused the judge to announce an anticipated ruling that a sanity board was not required.

At trial the accused challenged the military judge because of this *ex parte* hearing. In denying the challenge, the judge stated that he would rule on the sanity board request after Stankus had testified and both parties were given an opportunity to examine him.

The accused then submitted a request for a bench trial which was accepted by the military judge. Subsequently, he denied the request for a sanity board.

 We attribute no malicious purpose to the military judge in having an *ex parte* session with the parties named, but his actions resulted in prejudicial error. ABA Standards, The Function of the Trial Judge, paragraph 1.6, (1972) establish clear and concise guidance regarding *ex parte* discussions of a pending case:

> The trial judge should insist that neither the prosecutor nor the defense nor any other person discuss a pending case with him ex parte, except after adequate notice to all other parties *and* when authorized by law or in accordance with approved practice. [Emphasis added.]

Moreover, the Code of Judicial Conduct, Canon 3 A(4) directs:

A Judge should accord to every person who is legally in a proceeding, or his lawyer, full right to be heard according to the law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending procedure....

These standards are applicable to courts-martial. Air Force Manual 111-1, Military Justice Guide, paragraph 1-11, 2 July 1973, Change 2 (8 October 1976).

The accused must be present at all stages of his trial. *United States v. Priest*, 19 U.S.C.M.A. 446, 42 C.M.R. 48 (1970).[1] The integrity of the military justice system is jeopardized where a hearing is held and witnesses questioned without all parties to the trial being present. The appearance of impropriety is itself to be avoided. This is as true for pretrial maneuvers as the trial itself. *United States v. Brown*, 22 C.M.R. 471 (A.C.M.R.1956); *see also United States v. Gardner*, 46 C.M.R. 1025 (A.C.M.R.1971). An *ex parte* communication by the military judge under circumstances which give the appearance of granting undue advantage to one party over the other cannot be condoned. *United States v. Wilkerson*, 1 M.J. 56, 57 n.1 (C.M.A.1981). The failure of the military judge to include the accused and his counsel in his discussions with Stankus put them at a serious disadvantage.[2] Accordingly, the challenge for cause should have been granted.

## II

WERE THE ACCUSED'S PRETRIAL STATEMENTS TO SMSGT SPICER AND MSGT BRYANT OBTAINED IN VIOLATION OF ARTICLE 31(b), U.C.M.J.?

The accused was interviewed separately by Senior Master Sergeant Spicer and Master Sergeant Bryant on three occasions regarding returned checks he had given to the Kadena Base Exchange. Neither Spicer nor Bryant ever advised him of his rights under Article 31(b), 10 U.S.C. § 831(b) of the Code, *supra*.

■ Before Article 31(b) rights apply it must be determined whether (1) a questioner subject to the Code was acting in an official capacity in his inquiry or only had a personal motivation; and (2) the person questioned perceived that the inquiry involved more than casual conversation. *United States v. Duga*, 10 M.J. 206 (C.M.A. 1981).

■ The two conditions were clearly met. The military judge found, as fact, that Sergeant Spicer was acting in his capacity as first sergeant and the inquiry was official in nature.

The question to be resolved is whether Spicer and Bryant, both of whom were the accused's first sergeants, reasonably suspected him of an offense. The record reveals that both knew that the accused had written checks that were dishonored. Spicer indicated his purpose for interviewing the accused was to ascertain why the checks were not covered and to get him to make restitution to the Base Exchange. Bryant, who was aware of approximately 28 checks being returned for insufficient funds, said his purpose was to determine what plan the accused had made to pay back the checks. Both denied suspecting the accused of an offense.

The facts in the case, *sub judice*, are strikingly similar to those in *United States v. Seay*, 1 M.J. 201 (C.M.A.1975), albeit here both individuals denied suspecting the accused of any wrongdoing. However, the interviews in the present case were not counseling sessions, but detailed questionings designed to ascertain what happened and how the money would be repaid. Any answers by the accused were not spontaneous, but in reply to questions. *Cf. United States v. Mraz*, 2 M.J. 266 (A.F.C.M.R.1976).

---

1. Of course this is not true where the accused has absented himself without authority after arraignment or is so disruptive that the trial cannot proceed in his presence.

2. We share the military judge's desire to avoid trial delays and control his docket, but the proper procedure would be a 39(a), 10 U.S.C. § 839(a) session to consider the sanity board request.

By any objective standard we are convinced that Spicer and Bryant reasonably should have suspected the accused of an offense; particularly after being aware that an additional 28 checks were being returned. *United States v. Pierce*, 2 M.J. 654 (A.F.C. M.R.1976); *see, United States v. Johnson*, 6 M.J. 716 (A.F.C.M.R.1976); *but c.f., United States v. Trotter*, 9 M.J. 584 (A.F.C.M.R. 1980). Accordingly, we find that Article 31(b) was violated. Thus we answer this certified question in the affirmative.

### III

WAS PROSECUTION EXHIBIT 1, CONSISTING OF 22 CHECKS, PROPERLY ADMITTED INTO EVIDENCE AS A BUSINESS ENTRY EXCEPTION TO THE HEARSAY RULE?

■ We have concluded the checks, together with the notations thereon, are admissible under Mil.R.Evid. 803(6) as the records of a regularly conducted activity.[3] A bank is a business activity. Documents such as checks are self-authenticating under Mil.R.Evid. 902(9) as commercial paper.[4] Uniform Commercial Code, Section 3–510(b) makes admissible evidence of dishonor and notice of dishonor.[5] The checks were properly before the court.[6]

For the reasons discussed the findings of guilty and the sentence are set aside. A rehearing is ordered.

POWELL, Senior Judge, and MILLER, Judge, concur.

---

**3.** Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

 * * * * * *

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes the armed forces, a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Among those memoranda, reports, records, or data compilations normally admissible pursuant to this paragraph are enlistment papers, physical examination papers, outline-figure and fingerprint cards, forensic laboratory reports, chain of custody documents, morning reports and other personnel accountability documents, service records, officer and enlisted qualification records, logs, unit personnel diaries, individual equipment records, daily strength records of prisoners, and rosters of prisoners.

**4.** Rule 902. Self-Authentication

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

 * * * * *

(9) Commercial paper and related documents. Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.

**5.** 3–510. Evidence of Dishonor and Notice of Dishonor

The following are admissible as evidence and create a presumption of dishonor and of any notice of dishonor therein shown:

 * * * * * *

(b) the purported stamp or writing of the drawee, payor bank or presenting bank on the instrument or accompanying it stating that acceptance or payment has been refused for reasons consistent with dishonor.

**6.** A better trial procedure would be for the trial counsel to ask the military judge to take judicial notice of the section of the U.C.C. that permits Mil.R.Evid. 902(9) to be invoked. This was not done here, but we take judicial notice of the cited U.C.C. section. *United States v. Miner*, 33 C.M.R. 450 (A.B.R.1963); *pet. denied*, 33 C.M.R. 436 (C.M.A.1963).