UNITED STATES

v.

**Airman Suzette L. McDONALD, FR 008–56–4205, United States Air Force.**

**ACM 23519.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 2 Feb. 1982.
Decided 23 Sept. 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter, Colonel Kenneth R. Rengert and Major Michael J. Hoover.

Before HODGSON, POWELL and MIL-LER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The accused was convicted of attempted murder, conspiracy to commit murder, and two allegations of soliciting another to commit murder, in violation of Articles 80, 81, and 134, 10 U.S.C. §§ 880, 881, 934, Uniform Code of Military Justice. She was sentenced to a dishonorable discharge, confinement at hard labor for 17 years, forfeiture of all pay and allowances, and reduction to airman basic.

## I

In July 1980, the accused met Airman Jack Mowbray and fell in love. Their relationship was complicated as Mowbray was married, and his wife, Elizabeth, also an airman, would not agree to a divorce. After some discussion, the accused and Mowbray decided that the best solution would be for him to "get rid of his wife." In September 1980, the accused offered $10,000.00 to a co-worker if "he would take care of" Elizabeth; $5,000.00 was to be paid in advance with the remainder coming from insurance proceeds. The co-worker initially accepted the offer, but later refused as "Elizabeth used to be a friend of his."

Subsequently the accused made the same offer to Airman Sanford who agreed to rig an explosive device on Elizabeth's car. Later the accused borrowed Elizabeth's car and she and Sanford drove to a remote area where Sanford attached a bomb to the vehicle. The device Sanford attached was capable of destroying the vehicle when completely connected. Apparently, Sanford had second thoughts about his participation in the operation because he did not connect the last wire that would activate the bomb. However, he did not tell the accused that the bomb would not explode as planned. The next day the accused approached Sanford complaining that "it did not work;" she appeared angry at the time.

On 21 July 1981, the accused became aware that she was under investigation. That evening she went to the home of Staff Sergeant Young, a security policeman, and told him of the incident that had occurred the previous fall involving Sanford and Elizabeth Mowbray. She approached Young because they were friends, and she knew he had a contact with the Office of Special Investigations (OSI). Young called the OSI for advice and was told that they would interview the accused within the next day or so. This information was given the accused and she was also told she could talk to a lawyer if she wished. Nevertheless, the accused told Young about the bomb scheme. Early the next morning Young told the OSI what the accused had said. Later the accused called the OSI for an appointment, and went to their office that afternoon. After being fully advised pursuant to Article 31, 10 U.S.C. § 831, *Code, supra,* and of her right to counsel, she executed a written statement outlining the attempt on Elizabeth Mowbray's life.

## II

■ The accused maintains her statement to the OSI was tainted by the illegally induced confession that Young obtained the previous evening. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Tersiner,* 47 C.M.R. 769 (A.F.C.M.R.1973). Appellate defense counsel concede that Young was not acting in an official capacity when he found the accused on his doorstep, but argue that he took advantage of an emotional female airman when he allowed her to confess to a serious crime without first giving her the benefit of a rights advisement. They urge that since Article 31 protections are broader than those of the Fifth Amendment, *United States v. Lewis,* 12 M.J. 205 (C.M.A.1982), and since it was reasonably foreseeable to Young that the accused would incriminate herself if she continued to talk, he was obligated to insure she was aware of the protection afforded her under the Code and of her right to counsel.

We disagree and find no impediment to the Government's use of the accused's statement to the OSI. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court made it clear that volunteered statements to police are not barred by the Fifth Amendment. An individual who wishes to confess may enter a police station and do so. There is no requirement that she first be advised of her right to counsel. *United States v. Goldman,* 18 U.S.C.M.A. 389, 40 C.M.R. 101 (C.M.A. 1969); *Davidson v. United States,* 371 F.2d 994 (10th Cir. 1966).

The Court of Military Appeals faced a situation similar to the one *sub judice* in *United States v. Duga,* 10 M.J. 206 (C.M.A. 1981). In finding no "custodial interrogation" of an accused by a policeman friend, Chief Judge Everett stated:

Therefore, in light of Article 31(b)'s purpose and its legislative history, the Article applies only to situations in which because of military rank, duty, or other similar relationship, there might be subtle pressure on a suspect to respond to an inquiry. *United States v. Gibson,* [3 U.S. C.M.A. 746, 14 C.M.R. 164 (1954)]. Accordingly, in each case it is necessary to determine whether (1) a questioner subject to the Code was acting in an official capacity in his inquiry or only had a personal motivation; and (2) whether the person questioned perceived that the inquiry involved more than a casual conversation. *United States v. Gibson, supra.* Unless both pre-requisites are met, Article 31(b) does not apply.

In the case at hand the evidence is undisputed that the conversation was begun by the accused; it was she who came to Young's house unannounced and for the purpose of making a statement. Even after being told she could talk to a lawyer if she wished, she persisted in discussing the incident. The motivation to begin the discussion was hers. It is clear that Young was not acting in an official capacity at any time during the conversation and the accused knew it.

The situation at bar is almost a classic example of the volunteered "police station" confession referred to by the Supreme Court in *Miranda v. Arizona, supra.* It was the accused who conceived the idea to confess. *Cf, United States v. Owens,* 12 M.J. 817 (N.M.C.M.R.1981). There is no requirement that law enforcement officials interrupt a volunteered confession with an advisement of rights warning. *Miranda v. Arizona, supra; United States v. Stabler,* 490 F.2d 345 (8th Cir. 1974); *see, Gilpin v. United States,* 415 F.2d 638 (5th Cir. 1969), footnote 2.

The record is clear that Young did not conduct an interrogation of the accused, but just listened to what she had to say. The accused could not have possibly believed her conversation with him was of an official nature. Thus, an Article 31(b) warning was not required. *United States v. Duga, supra; cf., United States v. Dean,* 13 M.J. 676 (A.F.C.M.R.1982). Accordingly, it follows that her statement to the OSI the next day after proper advisement was admissible.

### III

The accused also maintains that the trial judge erred by not instructing the members on the elements of murder which was the object of the conspiracy. It is well established law that a military judge must instruct the court as to the elements of the offense charged, and it is error not to instruct on the elements of the offense which was the subject of conspiracy. *United States v. Chapman,* 10 C.M.R. 306 (A.B.R. 1953); *United States v. Canter,* 42 C.M.R. 752 (A.C.M.R.1970). However, it is not essential that such instructions follow a particular form or sequence. If a missing element is included within the four corners of the instructions with sufficient clarity that the court is fairly informed, the trial judge has adequately covered the subject. *United States v. Schiefer,* 28 C.M.R. 417 (A.B.R. 1959); *accord, United States v. Ward,* 42 C.M.R. 527 (A.C.M.R.1970). Here the trial judge completely and fully instructed the court on the elements of murder albeit out of sequence. Thus the necessary guideposts

were present for informed deliberations on the guilt or innocence of the accused. *United States v. Landrum,* 4 U.S.C.M.A. 707, 16 C.M.R. 281 (C.M.A.1954).

### IV

 Appellate defense counsel suggest that the accused's sentence is inappropriate in light of her age, emotional state during the commission of the offenses, and her family background. We will not overlook the seriousness of her participation in a contract murder scheme. The plan failed only because the person she hired had second thoughts about his involvement. Upon consideration of the entire record, we find the sentence appropriate. The findings of guilty and the sentence are

AFFIRMED.

MILLER, Judge, concurs.

POWELL, Senior Judge, absent.