UNITED STATES, Appellant,

v.

Winston T. LEWIS, Private First Class,
U. S. Marine Corps, Appellee.

No. 39,725.

NCM 80–0478.

U. S. Court of Military Appeals.

Jan. 18, 1982.

For Appellee: *Lieutenant Thomas P. Murphy*, JAGC, USNR (argued).

For Appellant: *Lieutenant Commander John C. Vinson*, JAGC, USNR (argued); *Commander T. C. Watson, Jr.*, JAGC, USN, *Lieutenant J. G. Van Winkle*, JAGC, USNR (on brief); *Lieutenant Colonel A. P. Tokarz*, USMC.

## Opinion of the Court

COOK, Judge:

The accused was tried by special court-martial before a military judge alone, and was convicted, contrary to his pleas, among other things, of disrespect to a superior commissioned officer and dereliction of duty, in violation of Articles 89 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 889 and 892, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor and partial forfeitures for 5 months, and reduction to Private E–1. On review, the United States Navy Court of Military Review set aside the findings of guilty of disrespect to a superior commissioned officer on the ground that the accused's rights under Article 31, U.C.M.J., 10 U.S.C. § 831, had been violated. 9 M.J. 936 (1980).

This case is now before this Court upon certification by the Acting Judge Advocate General of the Navy as to the following issue (9 M.J. 404):

> Was the United States Navy Court of Military Review correct, as a matter of law, when it set aside findings of guilty of disrespect toward a superior commissioned officer, in violation of Article 89, UCMJ, and dismissed that charge on the basis that the allegedly disrespectful words were inadmissible in evidence for any purpose, because they were spoken in response to an official inquiry not preceded by required warnings under Article 31, UCMJ, and were related to the subject matter of that inquiry, even though the alleged disrespectful words themselves, together with the manner they were spoken, may have constituted a new offense which had not existed prior to their utterance?

On July 12, 1979, Second Lieutenant Wemyss, Platoon Commander, 1st Platoon, and Corporal Baker, Squad Leader, were looking for the accused, who "had fallen out" of a physical training session. Lieutenant Wemyss saw the accused walking in the platoon area, reading a comic book. At that moment, the morning flag-raising ceremony began, and the lieutenant told the accused to stop and stand at attention. The accused stopped, but he turned his back to the colors, did not stand at attention, and appeared to continue reading his comic book. After completion of the flag-raising ceremony, Lieutenant Wemyss asked accused, "Why didn't you stand at attention?"; the accused replied, "I don't have to stand at attention and I don't care what you say."[1] The latter part of the accused's retort was the basis of the disrespect specification.

The Court of Military Review held that Lieutenant Wemyss' failure to inform the accused of his rights under Article 31 rendered the whole of the accused's reply inadmissible against him in a trial by court-martial, even assuming that the latter part constituted disrespect to his superior commissioned officer. We disagree.

■ The special relationship in the military between superior and subordinate persons is recognized by the history and purpose of Article 31. *See United States v. Duga,* 10 M.J. 206 (C.M.A.1981); *United States v. Armstrong,* 9 M.J. 374 (C.M.A. 1980). Because of a subordinate military person's obligation to respond to the command of his superior, Congress enacted Article 31 to serve as a protection against the inherent tendency of that relationship, either directly or subtly, to induce an accused to respond to a question by the superior. *United States v. Duga, supra; United States v. Armstrong, supra; United States v. Gibson,* 3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954). Article 31 provides in pertinent part:

> (b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to

1. Defense counsel objected to admission of accused's response on the ground that the accused was then suspected of a violation of the Uniform Code of Military Justice and should have received an Article 31 warning. The military judge overruled the objection.

make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

.   .   .   .   .

(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

These provisions accord an accused even broader protection than the Fifth Amendment of the United States Constitution [*see United States v. Musguire*, 9 U.S.C.M.A. 67, 25 C.M.R. 329 (1958)], and may apply in situations far more subtle than the custodial interrogation situation defined by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Cf. United States v. Seay*, 1 M.J. 201 (C.M.A.1975); *United States v. Souder*, 11 U.S.C.M.A. 59, 28 C.M.R. 283 (1959).

██ However, Congress has also recognized the imperative need to protect the status of the superior from disrespect in his relationships with subordinates. *See* Articles 89 through 92, UCMJ, 10 U.S.C. §§ 889–892. A military leader is charged with the responsibility to carry out the mission of his armed force and is clothed with the authority to demand "a discipline without counterpart in civilian life." *Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975). Thus, there has been both a recognition and balancing of the duties and obligations owing between superior and subordinate.

██ Here, Lieutenant Wemyss, as a military superior, had a legitimate concern to determine why the accused failed to show respect to the colors. He was aware that the accused had committed, in his presence, a possible violation of the Uniform Code.[2] He knew or should have known that the accused might answer in an incriminating manner. *See United States v. Anglin*, 18 U.S.C.M.A. 520, 40 C.M.R. 232 (1969); *see also United States v. Henry*, 21 U.S.C. M.A. 98, 44 C.M.R. 152 (1971). Hence, if he intended to solicit incriminating statements from the accused, a preliminary warning under Article 31 was mandated. However, in carrying out his military duties the superior must be allowed an interplay of communication with subordinates not prefaced in every instance by a warning of rights.[3] *See United States v. Seay, supra* at 204–05 (Cook, J., concurring in the result):

> I cannot conceive that Article 31 . . . requires that every time he talks to a subordinate about an apparent lapse of performance of duty or conduct as a member of the armed forces he must first warn the subordinate of the right to remain silent.

Thus, in acquiring the knowledge necessary to carry out his functions as an officer, Lieutenant Wemyss forewent the possible use of such information as might be incriminating of the accused. But he did not forfeit the respect due him as an officer and superior of the accused. Although this Court has recognized that there are situations where a military superior may conduct himself in a manner inconsistent with his status and office and thereby lose the protection provided by law for that office [*see United States v. Richardson*, 7 M.J. 320 (C.M.A.1979); *United States v. Rozier*, 1 M.J. 469 (C.M.A.1976); *United States v. Struckman*, 20 U.S.C.M.A. 493, 43 C.M.R. 333 (1971); *United States v. Noriega*, 7 U.S.C.M.A. 196, 21 C.M.R. 322 (1956)], we have never held that failure to give a proper warning, even in a situation where one is required, created a defense to a charge of disrespect to an officer.

---

**2.** Lieutenant Wemyss testified that when ordered to stand at attention, the accused reacted with a "[k]ind of a dull stare . . . dull recognition of who we were." This, in conjunction with the fact that the accused had "fallen out" of "PT" might well have raised a question as to his mental and physical condition at that particular time.

**3.** *Compare Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), *with United States v. Haskins*, 11 U.S.C.M.A. 365, 29 C.M.R. 181 (1960).

In *United States v. Hendrix*, 21 U.S.C. M.A. 412, 45 C.M.R. 186 (1972), the accused was convicted of assault upon a superior commissioned officer in the execution of his duties. On appeal, the accused contended that the conviction should be reversed because of lack of probable cause for the search the officer was conducting. This Court held that existence of probable cause was not the critical factor; what was determinative was a "callous disregard" of the accused's right of privacy when the officer read a letter of the accused, which exceeded the bounds of "[c]ommon decency and human dignity" and precipitated the accused's physical response. 21 U.S.C.M.A. at 417, 45 C.M.R. at 191. While holding that the officer had, by his act, abandoned his office, the Court observed that the accused might well have been guilty of an assault upon a commissioned officer *not* in the execution of his office. In *United States v. Lewis*, 7 M.J. 348 (C.M.A.1979), we were faced, for the first time, with the issue of whether a retroactive determination that probable cause was lacking was, by itself, a defense to a charge of assault upon a commissioned officer in the execution of his duties. The Court unanimously held that it was not and further held "that a military ... officer does not depart from his office simply because there is a subsequent determination that a search or apprehension was not based on probable cause." 7 M.J. at 352.

■ Thus, while accused's response may not be used against him to establish the truth of the charge that he was derelict in his duty to respect the flag, the statement, *qua* statement, was admissible as evidence of his disrespect toward Lieutenant Wemyss.[4] The prohibitions of Article 31 and the Fifth Amendment against coerced confessions are based on the concept that involuntary statements must be excluded because of their inherent potential for unreliability. But here, the fact of the making of the statement and the impact of its words which go to show disrespect, a totally different offense not even in being at the time of the question, are not in any way related to the truth, falsity, or reliability of its meaning. The statement must be considered from two different views: (1) as to its relation to the offense committed in not respecting the flag, and (2) as to the offense of disrespect to Lieutenant Wemyss. As to the first instance, the response that the accused did not have to respect the flag pertained to that offense, and absent proper warning, was not admissible against him. But, as to the second instance, the statement constituted a disrespectful act toward a superior officer which would be admissible against the accused, irrespective of any warning under Article 31. The consideration of a "statement," apart from the truth of its words, is like the situation when a witness who, though having the right to assert the privilege against self-incrimination, chooses instead to testify falsely. Whether or not his unwarned testimony— had it been truthful—would have been admissible against him in a trial for some other crime, his false testimony will support a conviction for perjury, an offense entirely separate from that upon which he had been testifying. *See United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).[5]

■ Under these circumstances, we hold that failure to give an Article 31 advisement does not bar admission into evidence of the accused's statement which, by its substance and context, constitutes a separate and distinct violation of the Uniform Code.

---

4. Had there been a trial before members, a cautionary instruction as to the limiting usage of the statement would have been required. As the accused was tried by military judge alone, we may assume that the judge understood the law and correctly applied it. *United States v. Montgomery*, 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970).

5. The Supreme Court in *Glickstein v. United States*, 222 U.S. 139, 142, 32 S.Ct. 71, 73, 56 L.Ed. 128 (1911), stated:

> [I]mmunity afforded by the constitutional guaranty relates to the past and does not endow the person who testifies with a license to commit perjury.

*See also Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

We answer, in the negative, so much of the certified question which asks whether the disrespectful words were inadmissible in evidence because they were not preceded by a warning under Article 31, and reverse the decision of the United States Navy Court of Military Review as to Charge II. The record of trial is returned to the Judge Advocate General of the Navy for submission to that court for further proceedings in light of this decision.

Chief Judge EVERETT and Judge FLETCHER concur.