**176**

UNITED STATES, Appellee,

v.

James F. OLSON, Specialist Four, U.S. Army, Appellant.

No. 45692.

CM 442616.

U.S. Court of Military Appeals.

Jan. 30, 1984.

For Appellant: *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire II, Captain Rita R. Carroll, Captain Warren G. Foote* (on brief); *Major Robert C. Rhodes.*

For Appellee: *Lieutenant Colonel John T. Edwards, Captain Andrew D. Stewart* (on brief); *Major Michael R. Smythers.*

### Opinion of the Court

COOK, Judge:

Tried by general court-martial, military judge alone, the accused was convicted, pursuant to his pleas, of attempted larceny and violation of a lawful general regulation by possessing an unregistered handgun, and, contrary to his pleas, of communicating a threat, in violation of Articles 80, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 892, and 934, respectively. The adjudged and approved sentence extends to a bad-conduct discharge, confinement at hard labor for 15 months, forfeiture of all pay and allowances, and reduction to Private E-1. The Court of Military Review affirmed the findings and sentence. We granted accused's petition for review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE OVER DEFENSE OBJECTION THE STATEMENT OF THE APPELLANT WHICH FORMS THE BASIS OF THE SPECIFICATION OF THE ADDITIONAL CHARGE (COMMUNCIATION OF A THREAT).

We hold that he did not and affirm.

The accused's assistant platoon sergeant was tasked to escort the accused from the confinement facility to the post finance office and clothing sales store. The sergeant had heard that the accused "had been busted" for "dealing ... with drugs." Out of curiosity the sergeant asked the accused "what kind of trouble he had gotten himself into." In response, the sergeant recalled that the accused stated: "Perry ratted on

me; I'm gonna get him" and "if he couldn't get him someone else on the outside would do it for him." This statement of the accused was the basis for the specification of the Additional Charge (communicating a threat).

Defense counsel, at trial, moved to suppress the statement on the ground that the accused had not been advised of his Article 31, UCMJ, 10 U.S.C. § 831, rights prior to interrogation. In denying the motion to suppress, the military judge stated:

> [T]he court finds that the response of the accused was not either a confession, admission, or any other inculpatory type statement pertaining to the offense for which the accused had been placed in pretrial confinement and that the statement of the accused which is the basis of the additional charge and specification, communicating a threat to Specialist Perry, was an offense which had its inception at that point and not being an offense of which Sergeant Martinelli had any reason to suspect the accused, the statement is admissible as not a response related to the subject of any interrogation. And pursuant to the holding in *United States versus Lewis,* previously cited by trial counsel, the statement is admissible and the motion to suppress the statement on that ground, or rather on that basis, is . . . denied.

In *United States v. Lewis,* 12 M.J. 205 (C.M.A.1982), the accused was observed by his platoon commander and squad leader not standing at attention during the morning flag-raising ceremony. The commander asked the accused why he did not "stand at attention," and "the accused replied, 'I don't have to stand at attention and I don't care what you say.'" *Id.* at 206 (footnote omitted). This statement was made the basis of a specification alleging disrespect to a superior commissioned officer. There, as here, it was argued that the failure of the commander to advise the accused of his rights under Article 31 rendered the accused's reply inadmissible. We held:

> [W]hile accused's response may not be used against him to establish the truth of the charge that he was derelict in his duty to respect the flag, the statement,

*qua* statement, was admissible as evidence of his disrespect toward . . . [the commander]. The prohibitions of Article 31 and the Fifth Amendment against coerced confessions are based on the concept that involuntary statements must be excluded because of their inherent potential for unreliability. But here, the fact of the making of the statement and the impact of its words which go to show disrespect, a totally different offense not even in being at the time of the question, are not in any way related to the truth, falsity, or reliability of its meaning. The statement must be considered from two different views: (1) as to its relation to the offense committed in not respecting the flag, and (2) as to the offense of disrespect to . . . [the commander]. As to the first instance, the response that the accused did not have to respect the flag pertained to that offense, and absent proper warning, was not admissible against him. But, as to the second instance, the statement constituted a disrespectful act toward a superior officer which would be admissible against the accused, irrespective of any warning under Article 31.

> Under these circumstances, we hold that failure to give an Article 31 advisement does not bar admission into evidence of the accused's statement which, by its substance and context, constitutes a separate and distinct violation of the Uniform Code.

*Id.* at 208 (footnote omitted).

The military judge was right. Olson's statement confessed to nothing, admitted nothing incriminating, and did not refer to any offense he had committed or was suspected of committing. Instead it constituted a threat, and, thereby, a violation of an Article of the Uniform Code. Consequently, it was admissible against the accused as evidence irrespective of any obligation to give an advisement of rights under Article 31.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.