### UNITED STATES

v.

**Technical Sergeant Carol L. ROLLINS, FR 432–94–5195, United States Air Force.**

**ACM 25468.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 Feb. 1986.

Decided 19 Dec. 1986.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Charles L. Wille.

Appellate Counsel for the U.S.: Colonel Kenneth R. Rengert, Colonel Joe R. Lamport and Captain Marc Van Nuys.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

STEWART, Judge:

Despite his pleas the appellant was convicted by general court-martial, by judge alone, of two violations of an Air Training Command Regulation by engaging in sexual intimacies with two female applicants for Air Force enlistment and one instance of wrongfully endeavoring to impede an investigation. It was alleged that the sexual intimacy on one occasion consisted of fondling and kissing the applicant's breasts and performing oral sex on her. On the other occasion it was alleged that the sexual intimacy was comprised of massaging another applicant's shoulders and chest. The sentence adjudged and approved by the convening authority was a bad conduct discharge, confinement for one year, and reduction to airman basic.

The appellant has assigned two errors and invited our attention to an additional two. The first assigned error is mooted by

our action in this case, and the second assigned error is without merit. We will discuss the invited errors after we summarize the evidence.

In 1984 the appellant was an Air Force recruiter assigned to Alexandria, Louisiana. B.G. was a female applicant who had taken an enlistment test in mid-May 1984. She had not done well on the test, and by the fall of 1984 the appellant was helping her to prepare for a retest. One preparation method was the viewing of Air Force films in the back room of the recruiting office. B.G. testified that one afternoon in the fall she was viewing a film, and the appellant was called away from her twice by a ringing telephone in the front office. After going to the telephone the second time he closed the curtains over the front window and locked the front door. He then turned the front room lights off and returned to her. Standing behind her, he asked if she'd like her back massaged, to which she replied yes. He initially rubbed her shoulders, but then moved his hands down her front onto her chest. Upon her query "... what are you doing?", he removed his hands. Nothing more was said about this incident, but she left the recruiting office in about two minutes. The appellant testified that he merely placed one hand on B.G.'s shoulder to call her attention to something depicted in the film. She then looked at him, but did not say anything. He removed his hand, did not massage her shoulders, and did not attempt to move his hands toward her breasts. While he acknowledged the lights were off in the room where she was watching the film, he denied locking the door and maintained the front room lights were on. Furthermore, he stated this occurred in May 1984 and the time of day was ten or eleven o'clock in the morning.

Another female applicant, K.B., testified as to what transpired between the appellant and her on 17 June 1985. She had taken a test early in the day and failed it by three points. The appellant offered to assist her in preparing for a retest and suggested they get together at the recruiting office that night. After a confirming telephone conversation she arrived at the recruiting office about 1900 hours. They were alone. She accepted a beer the appellant offered her. After they studied for a couple of hours, the appellant began rubbing his neck and complained that his neck and back were hurting. He asked her to give him a back rub. Although she initially declined, he insisted. The appellant turned off the lights, locked the door, and laid down on the office couch. The window curtains were already closed. She then massaged his back. The appellant kissed her and proceeded to partially undress her so that her breasts and genital area were exposed. The appellant kissed her breasts, her stomach, and her vaginal area. He also stuck his tongue into her vagina. The sexual activity was against her will and she said "no", probably about four times. She didn't scream because there was nobody around, and she didn't try to get up and get away because she was scared he might hurt her.

The appellant testified that K.B. on her own initiative began rubbing his shoulders; he did not suggest it. He had not offered or given her beer. The curtains were already closed and the door also had been locked previously. The rubbing led to their kissing, and it was about then that he turned off the lights. He kissed K.B.'s breasts and had sexual intercourse with her, but did not have oral sex with her.

In July 1985 the Air Force Office of Special Investigations (OSI) opened an investigation on the appellant. The OSI took a written sworn statement from the appellant on 3 July 1985, in which the appellant acknowledged the warning that he was suspected of "Coaching applicants and Sexual Intimacy with AF Applicants." Sometime later the appellant obtained legal counsel, and the OSI knew the identity of counsel before 4 September 1985. Special Agent (SA) D requested B.G. to come to the OSI office, and she complied on 4 September 1985. B.G. told him that the appellant had been trying to contact her by telephone for two weeks, but she had not returned the appellant's calls. SA D persuaded her to

call the appellant from the OSI office. He instructed her not to ask any questions, but to listen to what the appellant had to say and to repeat what the appellant was saying during the telephone conversation. B.G. did this. She testified that the appellant told her some people would be calling her and whatever she did, she should deny everything. He further said he'd helped her with the test, and he wasn't supposed to do so.

The first invited error is that the military judge erred when he denied trial defense counsel's motion to suppress B.G.'s testimony concerning what the appellant told her during the 4 September 1985 telephone conversation. The defense's theory was that B.G. was an agent of the OSI and, accordingly, she should have given the appellant a warning in accordance with Article 31, Uniform Code of Military Justice, and notice to counsel should have been given. The defense cited *United States v. Butner*, 15 M.J. 139 (C.M.A.1983); *United States v. Johnstone*, 5 M.J. 744 (A.F.C.M.R.1978); *United States v. Penn*, 39 C.M.R. 194 (C.M.A.1969), and Military Rule of Evidence (Mil.R.Evid.) 305(e) in support of its position.

■ We agree with the finding of the military judge that B.G. was acting as an agent of the OSI during the telephone conversation. Mil.R.Evid. 305(b)(1). Nevertheless, she was not questioning the appellant. To the contrary, she was returning his telephone calls and attempting to determine why he wished to speak to her. Although obviously the OSI was hoping to gain some information in furtherance of its investigation, this, in our view was not an interrogation which could have triggered the need for a warning and notice to counsel. It was a means to facilitate the receipt of a spontaneous statement the appellant wished to make to B.G. The cases cited by the defense involved interrogations, and Mil.R.Evid. 305(e) notice to counsel is only required where there is an intent to question or interrogate a suspect. This, to the contrary, is a situation where a suspect on his own initiative made a statement. *Unit-*

*ed States v. Lovell*, 8 M.J. 613 (A.F.C.M.R. 1979).

■ However, even if a warning and notice to counsel were called for, we believe the appellant's statement was nevertheless admissible. Although only testing matters were expressly mentioned, it conceivably could be construed to also refer to the alleged sexual incident with B.G. Additionally, it was something more. As the military judge found, the communication was " ... words constituting a new distinct offense not under investigation at the time ... namely, the obstruction of justice." Such being the case, we hold that the statement was admissible under the doctrine announced by the Court of Military Appeals in *United States v. Lewis*, 12 M.J. 205 (C.M.A.1982). There the accused failed to show respect to the flag. When asked by an officer, "Why didn't you stand at attention?", the accused replied, "I don't have to stand at attention and I don't care what you say." The Court held that while the accused's response could not be used against him to establish the truth of the charge that he was derelict in his duty to respect the flag, the statement was admissible as evidence of his disrespect toward the officer. Said the Court, "Under these circumstances, ... failure to give an Article 31 advisement does not bar admission into evidence of the accused's statement which, by its substance and context, constitutes a separate and distinct violation of the Uniform Code." We recognize that *Lewis* involved only the Article 31 warning, not notice to counsel. However, we believe the right to presence of counsel is intended to provide a suspect expert advice concerning his responses to interrogation, not to preclude him from committing other offenses. Thus, we have no hesitancy in applying the *Lewis* doctrine here and finding the appellant's statement was admissible to establish the separate and distinct offense of impeding an investigation.

The other invited error concerns the admission into evidence of the testimony of Airman C. Although trial defense counsel moved to suppress her evidence as un-

charged misconduct, the military judge admitted it under Mil.R.Evid. 404(b) as tending to establish modus operandi. While the military judge did not make extensive findings, he did say, "The evidence ... tends to establish a particular artifice used by the accused as related by the testimony of [K.B.] and Airman [C] which originated with the accused's complaint of a neck pain and proceeded to physical contact between the accused and the potential recruit in the recruiting office."

Airman C related that in January or February 1985, while she was seeking to enlist in the Air Force, she went to the appellant's recruiting office in the late afternoon to borrow a book. As she and the appellant were talking, he kept mentioning that he was tired, his neck hurt, and his back hurt. The more he mentioned it, the more she thought she should help him. So, she offered to rub his neck and he accepted. After a minute he suggested they move to the couch, and they did so. She rubbed his back for a few minutes, and then he suggested that she lie down while he rubbed her back. When she finally assented, the appellant got up, closed the curtains, locked the door, and turned off the lights. At that point she apologized for giving him the wrong idea and left. A few days later he apologized to her, mentioned he got carried away, and asked her not to say anything.

It is axiomatic that, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person to show that the person acted in conformity therewith." Mil.R.Evid. 404(b). Such evidence may not be admitted to show that the accused is a "bad person" or "bad man" who has the disposition to commit crimes. *United States v. Brooks*, 22 M.J. 441 (C.M.A.1986); *United States v. Logan*, 18 M.J. 606 (A.F.C.M.R.1984). The drafters of the Manual for Courts-Martial, 1984, (MCM, 1984), put it still another way: "... evidence of other crimes, wrongs, or acts is not admissible to prove a predisposition to commit a crime ..." MCM, 1984, App. 22, Mil.R.Evid. 404(b). In other words, evidence of uncharged misconduct or other

acts may not be received merely to show the accused had the propensity to commit the offense or offenses charged.

Nevertheless, such evidence, "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Mil.R.Evid. 404(b). "Modus operandi" is one of those purposes. For instance, *see United States v. Medina*, 761 F.2d 12, (1st Cir.1985). Modus operandi is a factor in determining the identity of a perpetrator. *United States v. Rappaport*, 19 M.J. 708 (A.F.C.M.R.1984), *aff'd*, 22 M.J. 445 (C.M.A.1986). If identity is not in doubt and the only issue is whether the criminal act was committed, modus operandi is not relevant. How can it be argued that, when identity is not in issue, evidence of modus operandi makes it "more probable" that the accused is the correct person? *See* Mil.R.Evid. 401. In such a case modus operandi only tends to show the already identified accused had the propensity to commit the crime charged. Even if modus operandi is relevant where identity is not in issue, how could modus operandi evidence by uncharged misconduct pass the balancing test required by Mil.R.Evid. 403? Since the evidence is not needed to prove identity, its probative value would be minimal at best, and would, therefore, in most, if not all, cases be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless cumulative evidence.

This Court has considered modus operandi cases previously. In *United States v. Barus*, 16 M.J. 624 (A.F.C.M.R. 1983), we held that evidence of similar uncharged misconduct was admissible to show modus operandi. Our analysis in that case centered around similarity and did not touch upon identity. Subsequently, in *United States v. Rappaport, supra*, we linked modus operandi with identity and held identity was not at issue in the case. For this and other reasons, we held that

the similar uncharged misconduct was inadmissible. In affirming our decision, the Court of Military Appeals held that since the court members were instructed that the evidence was admitted for the limited purpose of proving plan or design, it would not consider its admissibility for another purpose. However, the Court did say:

If the issue here were the identity of the man with whom Donna and Mary Ellen had sex, a distinctive technique employed by the accused in his sexual encounters might be relevant to show that all offenses were perpetrated by the same man. As there was no question of identity, however, it is doubtful whether evidence of *modus operandi* was relevant. *See United States v. Woods,* 613 F.2d 629 (6th Cir.), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980); *United States v. Silva,* 580 F.2d 144 (5th Cir.1978); *People v. Tasell,* 36 Cal.3d 77, 201 Cal.Rptr. 567, 679 P.2d 1 (1984).

*United States v. Rappaport,* 22 M.J. 445, 446–447 (C.M.A.1986).

In the case *sub judice* the identity of the alleged perpetrator was well known and not at issue. Both K.B. and B.G. knew the appellant. The appellant did not contest identity; he acknowledged that incidents occurred between him and the two women, but claimed the facts were different than charged in at least some respects. Under these circumstances evidence of other acts tending to show modus operandi was not relevant and could not survive the Mil.R. Evid. 403 balancing test. Its probative value was exceedingly slight, and the danger of unfair prejudice obviously outweighed its probative value. Accordingly, we hold that it was error for the military judge to admit Airman C's evidence of modus operandi under Mil.R.Evid. 404(b).

 Next we assess the prejudice this error may have caused. As to the charge concerning sexual acts with K.B., we see no prejudice whatsoever. In view of the appellant's admissions on the witness stand, Airman C's evidence undoubtedly had no influence on the factfinder. We see no connection between that evidence and

the charge of impeding an investigation. Furthermore, the acts with Airman C were not so egregious as to taint proceedings on dissimilar charges. As to the charge concerning massaging B.G.'s shoulders and chest, we find that Airman C's evidence, which described a somewhat similar incident, may well have influenced the factfinder, the military judge. The factual issue as to that charge was whether B.G. was to be believed rather than the appellant. There is a danger the military judge may have felt Airman C's testimony corroborated that of B.G. Thus, we cannot rule out prejudice as to that specification, and we cannot affirm the finding of guilty as to that specification.

Accordingly, we set aside the finding of guilty of Specification 2 of Charge II. We believe the interests of justice will best be served if that Specification is dismissed, and, therefore, we hereby dismiss it.

 We hereby reassess the sentence and find it nevertheless appropriate. We are convinced the sentence is appropriate in relation to the affirmed findings of guilty and is no greater than that which would have been imposed if the prejudicial error had not been committed.

We conclude no error, other than noted, prejudiced the substantial rights of the appellant. Accordingly, the findings of guilty, as modified, and the sentence are

AFFIRMED.

Senior Judge SESSOMS, concurs.

LEWIS, Judge (concurring):

I concur in the disposition reached by the majority, as I believe it is consistent with the Court of Military Appeal's pronouncement in *United States v. Rappaport, supra.* I am concerned, however, as to whether prior acts of misconduct of a peculiarly distinctive nature and identical or similar to those allegedly engaged in by an accused in a case under consideration should be admissible only when identity is in issue. In my view, there are circumstances in which an accused's modus operandi is sufficiently distinctive to justify

consideration by the factfinders, notwithstanding the absence of an issue as to identity. Granted, such evidence smacks of propensity. However, a sufficiently distinctive, or unique, "propensity" may have significant probative value. The more distinctive the propensity, the less likely that the triers of fact, properly instructed, would improperly view such evidence in a generalized "bad person" context. Consideration of such evidence in an appropriate circumstance would not appear to be contrary to that portion of Mil.R.Evid. 404(b) which cautions: "Evidence of other crimes, wrongs or acts is not admissible to prove the *character* of a person in order to show that the person acted in conformity therewith." (Emphasis added.)