CRAWFORD, Judge
(concurring in part and dissenting in part):
“[H]ard cases, it is said, make bad law.”[1] This frequently quoted observation has served as a warning for over 300 years to judges on courts of law who would modify or reject a rule of law for the benefit of an individual cause, rather than reach a result they deem equitably unattractive. Despite this warning, the majority rejects decades of military practice and precedent to reach the result they deem equitable — a result that may seem fair but may also qualify as the outcome Lord Argyll warned against.
We profess to be a Nation that adheres to the rule of law. Because I believe that to be true, I prefer to follow the rule of law, even when it produces a “hard” result. In this case, I would apply our precedent, leaving unaltered the very nature of trial by military judge alone, and affirm not only the sentence in this ease, but the principles this Court and all military justice practitioners have followed since 1969. For those reasons, I must respectfully dissent from the result and from the majority’s new rules restricting consideration by military judges of collateral consequences during their deliberations on sentencing.
As to the majority’s return to the plain language of Military Rule of Evidence (M.R.E.) 606(b), however, I concur and applaud the majority’s willingness to correct a prior instance of judicial rulemaking by this Court.
FACTS AND FACT FINDING
If we were to disregard, for the moment, the Military Rules of Evidence, the Rules for Courts-Martial (R.C.M.), and the facts as found by the court below, the “facts” of this case would be unappealing, from the Government’s standpoint. These “facts” would establish that the military judge had discussed his deliberative process in an informal setting, that he had departed from established practice to apply a service policy not formally introduced to the proceedings, and that he had increased Appellant’s sentence based on that policy.
To the contrary, the record and the factual findings of the court below establish only that Appellant’s trial defense counsel timely complained to the convening authority that the military judge had unfairly sentenced Appellant to an additional ten days of confinement by considering what counsel described as a well known practice of “Army Regional Corrections Facilities.” The Army Court of Criminal Appeals also noted defense counsel’s assertion that the military judge had made the post-trial statement and that this assertion was unrebutted by the Government. To support Appellant’s claim, however, there is not now, nor has there ever been, any competent evidence of the military judge’s statement. As the court below noted, its task was to “ultimately conclude [whether] the statement is competent evidence that the military judge improperly considered extraneous information.” United States v. McNutt, 59 M.J. 629, 632 (A.Ct.Crim.App. 2003). It then implicitly assumed the statement had been made for the purpose of concluding that, “there is no competent evidence of extraneous prejudicial information that was improperly brought to the attention of the sentencing authority.” Id. at 633. It so concluded, in part, because the policy in question is common knowledge to military judges. As noted below, it is also one frequently and historically applied to the benefit *25 of servicemembers who have elected to be sentenced by military judge alone.
What the court below considered arguendo, this Court now finds as fact: that the statement was made and that there was an improper consideration of collateral matters.
In United States v. Ginn,[2] we recognized both the authority and the limitations of Article 66 courts when they address issues raised in post-trial affidavits without remand for a DuBay[3] hearing on disputed factual issues. As we are not empowered by statute to make factual findings, our authority is certainly less and our limitations more stringent. Nonetheless, the majority decides that this Court can award relief on the basis of an unrebutted, unsworn, post-trial factual assertion by a defense counsel to a convening authority. Moreover, without reference to a DuBay hearing, or even a remand to the court below, the majority finds that the defense counsel’s statement must be true because the military judge did not rebut that statement to the convening authority, notwithstanding the precedent of this Court suggesting that such a rebuttal would have been improper,[4] and absent any evidence that the military judge has ever been made aware of the “statement.”[5] We are not empowered by Congress to find such facts. Consequently, even if the majority now overrules both Rice and Gonzalez[6] and concludes that M.R.E. 606(b) does not apply to military judges, unless we, like the court below, address this issue arguendo, we must remand for a DuBay hearing.
LAW, PRECEDENT, AND PRACTICE
Trial, including sentencing, before military judge alone is different than trial before members. In United States v. Hannan,[7] this Court not only condoned, but encouraged military judges to know and apply “good-time” policies during their sentencing deliberations.[8] While not central to the holding of that case, the Court clearly recognized not only the relevance of such information to military judge sentencing proceedings, but affirmed that such knowledge and application is and always has been part of the military judge’s function when an accused elects “military judge alone” as the sentencing authority:
Thus, in seeking to arrive at an appropriate sentence, Judge Wold properly took into account the rules governing parole eligibility. Indeed, military judges can best perform their sentencing duties if they are aware of the directives and policies concerning good-conduct time, parole, eligibility for parole, retraining programs, and the like.[9]
Hannan’s failure to elaborate on the mechanism by which military judges are properly to consider such information is not surprising in light of the overlap created by M.R.E. 201A (Judicial Notice of Law) and the principle long embraced by this Court that military judges are presumed to know and properly apply the law.[10] If it becomes error for a military judge to apply law (including appropriate regulations) not admitted in evidence and not formally noticed to the parties,[11] then what law is it that military judges will be *26 presumed to know and properly apply? Requiring military judges formally to notice judicially all law they consider would hopelessly burden the trial bench with identifying and announcing before each ruling or decision, all the law the judge intends to consider.
On a related issue, when an accused elects to be sentenced by military judge alone, the military judge, unlike court members, is not only permitted to be aware of and consider sentences received by similarly situated accuseds, but we have repeatedly and recently expressed our expectation that he do so:
The experienced and professional military lawyers who find themselves appointed as trial judges ... have a solid feel for the range of punishments typically meted out in courts-martial.... We have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which a military judge imposes sentence____[12]
That military judges may sometimes consider what court members may not is simply not news. As one commentator has noted:
Awareness of the collateral consequences of a court-martial sentence is yet another area where court members lag far behind the military judge. In United States v. Griffin, the COMA affirmed the general rule that “courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration.” This may deprive the accused of the opportunity to present important evidence to the members. For example, members may be permitted to hear testimony about a rehabilitative program for sex offenders at the United States Disciplinary Barracks, but not be informed of the sentence length necessary for the accused to be incarcerated there. Judges, on the other hand, are cognizant of the administrative consequences of their sentences and are permitted to consider this knowledge in arriving at a proper sentence.[13]
The majority cites Hannan, without quotation, explanation, or discussion, as if to dismiss by faint notice Hannan’s significance, not only for its holding, but also for its obvious value as a historical record of the way military judge alone cases have been tried since the Military Justice Act of 1968. Further ignoring the distinction between sentencing by members and sentencing by military judge alone, the majority quotes from our prior opinions addressing restrictions on information that court members are permitted to consider. Finally, the majority overrules those portions of Rice and Gonzalez that are inconsistent with its opinion, but leaves untouched our decisions in Hannan, Lacy, Ballard, and United States v. Duncan,[14] and many similar opinions.
Since 1969, our opinions have starkly depicted our historically different approach to sentencing by members, as opposed to sentencing by military judge alone, and that difference has been relied on by defense counsel and their clients for decades. For example, defense counsel not infrequently advise their clients to elect trial by military judge alone when the case presents a legal defense or when counsel wishes to argue law to the military judge on findings or sentence. This is particularly true when the facts alleged by the Government are repugnant and the legal distinctions fine.[15] In trials before *27 military judge alone, military judges are not restricted to consideration of only the law presented and argued by counsel, any more than they are restricted in that sense while ruling on a matter of law.[16]
As noted above, the defense frequently elects trial by military judge alone when seeking a measure of predictability in sentencing. This predictability exists, in large measure, because military judges are aware — some to the point of maintaining meticulous tracking systems — not only of the sentences imposed in similar cases as recorded in reported appellate law, but of the sentences they have imposed in prior cases under similar circumstances.[17] Prohibiting military judges from considering such matters during sentence deliberations, on the grounds that such matters could not properly be considered by members, would be an enormous departure from decades of practice with potentially disastrous results, as noted below.
Just four years ago, we unanimously announced in Duncan that a military judge may answer, in instructions, the questions of court members regarding parole and treatment programs, and may do so by “draw[ingj upon a body of information that is reasonably available and which rationally relates to the sentencing considerations in ROM 1005(e)(5).”[18] The majority announces today that a military judge, sitting alone, may not draw on that very same “body of information,” concluding without stating that such is now “extraneous prejudicial information” improperly considered by the military judge. In sum, the majority now chastises Judge Swann for considering and applying exactly the same policies that engendered our commendation of Judge Wold twenty years ago. It is this selective application, and sub silentio rejection, of our precedent that may lead our readers to question whether the majority’s position is one of law or equity.
THROWING THE BABY OUT WITH THE BATH WATER?
In what is no longer a novel approach by this Court, the desire for an equitable result in an individual case appears to have produced new rules for the conduct of courts-martial. Leaving room for exceptions to be applied as equity may require, the majority opinion is likely to be read as recognizing two “well-settled general rules”: (1) military judges and court members are bound by the same rules pertaining to consideration of collateral consequences in sentencing; and (2) neither court members nor military judges may consider collateral consequences in deliberations on sentence:
[T]he general preference for prohibiting consideration of collateral consequences is applicable to the military judge’s consideration of the Army good-time credits. Each accused deserves individualized consideration on punishment. Thus, “proper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender, not on many variables not susceptible of proof.” In other words, sentence determinations should be based on the facts before the military judge and not on the possibility that Appellant may serve less time than he was sentenced to based on the Army’s policy. Moreover, good-time credits are awarded as a consequence of the convicted servicemember’s future behavior — behavior that may or may not take place. Therefore, the possibility of good-time credit should not be considered by the *28 members or the military judge when deciding what sentence is appropriate.
United States v. McNutt, 62 M.J. 16, 19-20 (C.A.A.F.2005) (footnotes omitted). There is hardly a word of the majority’s reasoning in this case that would not compel application of these general rules to all policies on parole, “good time,” rehabilitative programs, length-of-confinement thresholds for assignment to the various confinement facilities, and other collateral consequences associated with confinement.
Although the confinement at issue in this case is ten days, the flaw in the majority’s holding is most apparent when applied to the other end of the confinement scale. As the majority said:
[Tjhis does not mean that he should consider [the policy] in determining Appellant’s sentence. We hold that the military judge erred in considering the Army’s “good-time” credit policy when he assessed Appellant's sentence.
Id. at 20. The very same DOD Instruction that the majority chastises the military judge for considering is also the authority for “good time,” parole, and clemency permitted in cases of life without parole, life, and terms of years. In fact, as every military judge and every experienced defense counsel knows, service members sentenced to life earn no “good time,” those sentenced to ten years or more earn ten days per month, and so on.[19] Even if applied only to “good time,” what today’s opinion tells practitioners involved in trials of service members with the most to lose is that these things cannot be considered by a military judge. “In other words, sentence determinations should be based on the facts before the military judge and not on the possibility that Appellant may serve less time than he was sentenced to based on the Army’s policy.”[20] Id. at 19-20. No longer will defense counsel be permitted to argue that their client should receive a term of years, rather than life, so that he or she can “earn” a future through “good time” and gain the hope and the motivation to lead a law-abiding life. No longer will a military judge be able, as Judge Wold did, to consider the collateral impact that a sentence of a particular length may have.
As written, however, there seems no reason not to apply the majority’s prohibitions to other, even more collateral consequences: the potential effect of sexual offender registration laws; the potential loss of professional licensure or certification; the potential loss of a security clearance, a military training program, a promotion, or an assignment; and the potential deportation of non-citizen servicemembers.[21] Any experienced practitioner would certainly question whether the majority opinion now precludes from consideration by a sentencing authority — including military judge alone — a vast array of collateral consequences frequently cited by defense counsel in arguments to the effect that an accused should be punished less harshly because he is being “punished by the system.”
That being the case, I must question why the majority did not also overrule or modify Hannan, Becker, United States v. Greaves,[22] or United States v. Luster.[23] Many may question whether the unspoken reason is the existence of a third general rule in the majority’s decision: (3) if a collateral consequence can be of benefit to the defense case, it may be considered, even if it would otherwise violate rule (1) or (2). It is in this fashion that the “baby of future Appellants” will be separated from the bath water; how *29 ever, the “baby of the Government” winds up in a storm sewer. Since such a rule — if a rule of law — could only be established by Congress or the President, one must presume that this unspoken “rule” is no more than the application of equity to avoid a “hard” result.
CONCLUSION
The question boils down to this. Does knowledge by the judge of the likely effect on a sentence to confinement of the clemency and parole process, which knowledge is applied by the judge in his determination of an appropriate sentence in a particular case, constitute “extraneous prejudicial information” or “extrajudicial knowledge”? This specific question was answered by this Court in Hannan, 17 M.J. at 123-4.
Indeed, military judges can best perform their sentencing duties if they are aware of the directives and policies concerning good-conduct time, parole, eligibility for parole, retraining programs, and the like.
In 1986, the now-Chief Trial Judge of the Army observed:
In his testimony before the Advisory Committee, Colonel James G. Garner, the Chief Trial Judge of the Army, commented that it was his policy to send a judge to visit the various confinement facilities and [to] prepare a memorandum detailing what he had learned on the visit. Each Army trial judge received a copy of the memorandum. Expecting the trial judge to disregard this knowledge in imposing sentence is nonsensical.[24]
Before we send sentencing by military judge in the direction of the Titanic, we should heed this logic and undertake a much more thorough review of history, practice, and precedent.

. Ex parte Long, 3 W.R. 18, 19 (1854).

. 47 M.J. 236 (C.A.A.F.1997).

. United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

. United States v. Rice, 25 M.J. 35 (C.M.A. 1987)(applying M.R.E. 606(b) to military judges).

. Authentication (R.C.M. 1104) precedes submission of matters by the accused (R.C.M. 1105(c)(1)).

. United States v. Gonzalez, 42 M.J. 373 (C.A.A.F. 1995).

. 17 M.J. 115 (C.M.A.1984).

. See, e.g., Department of Defense (DOD) Instruction 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority, December 17, 1999, Enclosure 26. It is highly likely that this policy is what the military judge relied on because it is a subject of instruction for all students at the Military Judges’ Course of the U.S. Army Judge Advocate General's Legal Center and School.

. 17 M.J. at 123-24.

. United States v. Lewis, 12 M.J. 205 (C.M.A. 1982).

. See M.R.E. 201.

. United States v. Lacy, 50 M.J. 286, 288 (C.A.A.F.1999) (quoting United States v. Ballard, 20 M.J. 282, 286 (C.M.A.1985)).

. J. Kevin Lovejoy, Abolition of Court Member Sentencing in the Military, 142 Mil. L.Rev. 1, 48-49 (1993)(intemal citations omitted).

. 53 M.J. 494 (C.A.A.F.2000). In Duncan, we unanimously affirmed a military judge’s instruction, over defense objection, based on exactly the same DOD Instruction. Id. at 498-99. Further, the military judge instructed the members, apparently from his own knowledge, on the availability of "alcohol and sex offense rehabilitation programs” for the accused during his prospective incarceration. Id.

. "For example, the accused may elect to be tried before a military judge alone when the facts and circumstances of the case may inflame the passions of a lay jury but not of a seasoned jurist.” Joseph L. Falvey Jr., United Nations *27 Justice or Military Justice: Which is the Oxymoron? 19 Fordham Intl. L.J. 475, 506 (1995).

. This is consistent with federal practice: "[a]ll that the procedural rules and the current trend provide is that the court itself is free to consult its own sources and to attempt to determine the appropriate law on the basis of all available statutes, decisions and other sources.” Stephen A. Saltzburg et al.. Federal Rules of Evidence Manual 129 (7th ed.1998).

. "We have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which a military judge imposes sentence____” Lacy, 50 M.J. at 288 (quoting Ballard, 20 M.J. at 286).

. Duncan, 53 M.J. at 500.

. DOD Instruction 1325.7, Encl. 26.

. The majority describes the authority in question as an "Army policy,” rather than a DOD Instruction, binding on all military confinement facilities. McNutt, 62 M.J. at 19-20.

. Oddly, the speculative, collateral consequence of loss of retirement benefits is not discussed by the majority, but certainly seems threatened unless saved by rule (3). See, e.g., United States v. Becker, 46 M.J. 141 (C.A.A.F.1997).

. 46(holding that military judge erred by not answering questions of members regarding effect on potential retirement benefits of BCD upon nineteen years, ten months of service).

. 55 M.J. 67 (C.A.A.F.2001)(holding that military judge erred, in trial by members, by excluding evidence of potential lost retirement benefits in a case of eighteen years and three months of service).

. Denise K. Vowell, To Determine an Appropriate Sentence: Sentencing in the Military Justice System, 114 Mil. L.Rev. 87, 180 n. 489 (1986).